In the Matter of the Application of CHARLES GUDEN, as
Sheriff of the County of Kings, Appellant, to Compel the
Delivery to him of Books and Papers Belonging to Such
Office and in Possession of NORMAN S. DIKE, Respondent.

CONSTITUTIONAL LAW — POWER OF GOVERNOR TO REMOVE OFFICERS
DESIGNATED IN SECTION 1, ARTICLE 10 OF THE CONSTITUTION IS ABSO-
LUTE.  The power vested in the governor, by section 1 of article 10 of the
Constitution, of removing the officers therein designated, upon charges
and after a hearing, is executive, not judicial, and the exercise of such
power is not reviewable by the courts.

*Matter of Guden,* 71 App. Div. 422, affirmed.

(Argued June 13, 1902; decided June 20, 1902.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
April 22, 1902, which reversed an order of Special Term in a
proceeding instituted under section 2471a of the Code of Civil
Procedure, directing the respondent herein to deliver to the
appellant books and papers belonging to the office of sheriff
of Kings county.

Charles Guden, the petitioner, was elected sheriff of Kings
county at the election in 1901, and thereafter duly qualified
and took office.   Subsequently, charges having been presented
against him, alleging acts of misconduct committed prior to
his election, the governor, after a hearing, ordered his removal
from office and appointed Norman S. Dike in his stead, who,
acting under his certificate of appointment, took possession of
certain books and papers appertaining to the office of sheriff.
The petitioner, asserting that his removal was violative of the
provisions of the State Constitution, and so ineffective, insti-
tuted this proceeding.

*Benjamin F. Tracy, Jerry A. Wernberg, Charles H.
Hyde* and *Levi W. Naylor* for appellant.   The courts have
jurisdiction and power in an action or proceeding between
individuals, or the state and individuals, in which individual

34

or public rights are at stake, to review an act of the chief executive, and determine a question of its validity. (*People ex rel.* v. *Brady*, 56 N. Y. 162; *Matter of Endymoin*, 8 How. Pr. 478; *People ex rel.* v. *Hoffman*, 166 N. Y. 462; *Comm.* v. *Fowler*, 10 Mass. 290; *Dullam* v. *Wilson*, 51 Am. Rep. 128; *Page* v. *Hardin*, 8 B. Mon. 648; *Comm. ex rel.* v. *Slifer*, 25 Penn. St. 23; *Comm.* v. *Shafer*, 3 W. & S. 340.) The order of removal is not conclusive, but the courts may go behind it. (*Field* v. *Comm.*, 32 Penn. St. 483; *Ex parte Ramshay*, 18 Ad. & El. [N. S.] 189.)

*G. D. B. Hasbrouck* for respondent. There is no limit in the Constitution of this state on the power of the governor to remove a sheriff from his office except that the sheriff shall have notice of the charges and an opportunity to be heard in his defense. (Pom. on Const. 494; Suth. on Stat. Const. § 291; *People ex rel.* v. *Angle*, 109 N. Y. 571; *People ex rel.* v. *Rice*, 135 N. Y. 485; *People ex rel.* v. *Mosher*, 163 N. Y. 39; *Martin* v. *Mott*, 12 Wheat. 32; *Dalton* v. *Richardson*, 43 Ohio St. 652.) The act of the governor in removing Guden was a political and executive act, and unimpeachable in its character. (*Sutherland* v. *Governor*, 29 Mich. 330; *People ex rel.* v. *Morton*, 156 N. Y. 141; Cooley's Const. Lim. [6th ed.] 55; *Wright* v. *De Frees*, 8 Ind. 302; *Matter of Greene*, 166 N. Y. 492; *State ex rel.* v. *Hawkins*, 44 Ohio, 116; 2 Story on Const. 367.)

PARKER, Ch. J. There resides in the people of this and every state an absolute power to prescribe rules of action, through legislation, to enforce rules of action and to transact generally the affairs of government, through executive acts, and to determine controversies between, enforce rights belonging to, and redress wrongs done to, citizens of the state, through the courts. This power of the people is uncontrolled, except as the people themselves have sought to restrain it either by the Constitution of the United States or by the Constitution of the particular state in which the act is done, the rule

adopted, or the judgment pronounced. (Cooley on Constitutional Limitations, 205.)

These powers the people of this state have by a written Constitution separated, and distributed among the three departments of government created by it — the executive, legislative and judicial — carefully enumerating the powers and defining their limits. And the Constitution must be so construed as to preserve rather than to destroy the powers of the co-ordinate branches of the government, thus securing the full exercise of all the powers conferred by the people.

In this country the power of removal is an executive power, and in this state it has been vested in the governor by the people. (Constitution, art. IV, § 1.) The Constitution further specifically provides — and has since 1821 in effect, and since 1846 in precisely the same words — that "the governor may remove any officer, in this section mentioned, [sheriffs, clerks of counties, district attorneys and registers in counties having registers], within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense." (Art. X, § 1.)

It does not require argument to persuade the mind that the power thus conferred is executive, not judicial, and that it was intended to be vested exclusively in the governor.

If the intent of the framers of the Constitution were not plainly apparent from the language of the clause, all doubt would be removed by an examination of the debates of the constitutional conventions of 1821 and 1846.

Prior to the Constitution of 1821 the office of sheriff had not been an elective but an appointive one. Under the Constitution of 1777 the appointments were made by a council consisting of the governor and one member from each of the four great senate districts of the state. The manner in which this power was exercised became the subject of such grave abuse that the convention of 1821 set about accomplishing a needed correction. The final result was that the electors of the several counties were authorized to choose the sheriffs by

ballot, and upon the governor was conferred the power of removal in language substantially like that in existence in the Constitution of to-day.

An examination of the debates of that convention seems to indicate that the propriety of vesting the power of removal in the governor was not questioned. A difference of opinion *did* prevail as to the advisability of requiring notice and an opportunity to be heard before removal.

Mr. VAN NESS " was not in favor of the governor's calling the officer before him to answer to complaints or charges, or of assigning his reasons for such removal. There might be reasons of a delicate nature, such as moral disqualifications, to occasion such removal. And with this power of removal in the executive, he was less opposed to the election of sheriffs and clerks by the people."

" Mr. ROOT wished the cause of removal might be known and assigned. He was no friend to gubernatorial delicacy, We had seen too much of it already."

The proposition was then divided into two parts.

" The question on the first part, relating to the removal of sheriffs, was taken and *carried*.

" The question was then stated to be on the second part of the proposition, requiring the governor to assign reasons for such removal, and to give to the sheriff an opportunity of appearing in his own defense.

" Mr. KENT [Chancellor Kent] was opposed to the proposition on the ground that it might be expedient for the governor to remove sheriffs without assigning his reasons. * * * The governor was the great sheriff of the state, and the sheriffs should be considered in the light of deputies.

" Mr. SPENCER [Chief Judge Spencer] approved of the proposition. No officer should be removed for arbitrary cause, nor without good reasons."

Mr. ROOT " was not in favor of yielding the reputation of his fellow-citizens to the delicacy of the executive."

Mr. TOMPKINS voiced the sentiment which finally prevailed when he said, " If this clause is rejected a sheriff may be dis-

placed in secret without cause assigned, which may be merely a political one." (Clark's Debates of the Constitutional Convention of 1821, pp. 195, 196.)

The advantage of notice of charges and opportunity to be heard was apparently regarded as resting in the publicity which would result, enabling the people to judge of the necessity or propriety of a removal. Such publicity would ordinarily prove a sufficient check, if any check can ever be needed upon a man holding the commanding position of governor of a state.

In the constitutional convention of 1846 the section of the proposed Constitution relating to election and removal of sheriffs and other county officers being before the convention, Mr. Van Schoonhoven moved to so amend it as "to provide that the removal should be made by and with the advice and consent of the board of supervisors of the county in which said officer may reside." "This," he said, "would give the officers against whom charges were preferred an opportunity to be tried by their peers."

"Mr. ANGEL said the governor had already the power to remove sheriffs, &c., and he had not heard that there was any complaint against that power, which had not been very frequently exercised.

"Mr. STOW hoped if the amendment prevailed, it would not be imposed upon the governor to see that the laws were faithfully executed. His powers had already been so restricted that he could not do much more than look on and wish that the government might do well. He could see no good reason for a change of the present Constitution in this respect.

"Mr. RHOADES concurred in this view of the question. Nothing certainly could be more proper and necessary than that the Chief Executive should have this control over the subordinate executive officers of the counties.

"Mr. VAN SCHOONHOVEN replied to Mr. Stow saying, that if the governor had nothing else to do, he might employ himself in this way, for that reason. His objection was to giving any one officer absolute power to remove another.

"Mr. PATTERSON had never felt any danger from this provision, and he did not believe any governor of this state would descend to the exercise of this power for mere partisan motives. He knew that in one instance it had been exercised with great propriety.

"Mr. BASCOM suggested that the power of removal might be properly transferred to the supreme court. These officers might then be tried by a tribunal very capable of deciding whether they had committed anything worthy of removal. He would be tried at home, too, while if the governor was to decide there must be the expense of a journey to the capital. There was no danger in leaving this power where it was, though it would result in some inconvenience and expense to the party dealt with.

"Mr. SIMONS insisted that it would not do to sever the chief executive from the subordinate executive officers of counties. There might be occasion for the prompt exercise of this power of removal — pervading excitement — which would admit of no delay in the removal of the officer.

"The amendment was lost." (N. Y. Cons. Conv. Deb. 1846 [Croswell & Sutton Argus Ed.], p. 770.)

The suggestion of Delegate Bascom that the power of removal be transferred to the Supreme Court seems not to have been welcomed by the convention, and one of the reasons may undoubtedly be found in the remarks of the next speaker, who most emphatically asserted that it would never do to sever the chief executive from the subordinate executive officers, for there might be occasion for the prompt removal of an officer that would admit of no delay.

Mr. Simons' speech closed the debate and the rejection of the amendment settled the question in favor of the governor's right to exercise this executive power without hindrance even from the local board of supervisors. And there it must remain if the judicial department of the state government is to enforce the principle underlying, as well as the mandates of, the Constitution apportioning the powers of government into three departments and making each department supreme in the performance of the duties committed to it.

The suggestion that, if the courts do not interfere, some chief executive may proceed in disregard of those principles which courts of impeachment have established, should not be given weight, for the ability to act quickly in the removal of administrative officers and clerks is as important in the conduct of government as in the management of a gigantic corporation or large individual enterprise. The attempt to safeguard the rights of the official, or the clerk, should not be carried to such an extent as to override the interests of the public, for the public business is of paramount importance. It is better that occasionally a mistake should be made in the removal of an officer than that the public business should be seriously interfered with — as it was, for instance, in this case by a controversy over the title of an office, which has resulted in the assumption by two men of the rights, powers and duties of sheriff of Kings county, in which one has been upheld by the Special Term of the Supreme Court, and the other by the Appellate Division thereof, causing in the meantime, necessarily, great embarrassment and delay in the administration of the criminal business of the county. And so it might happen in other cases, had the judiciary the power to review executive acts of removal. Hence, in their wisdom, the framers of the Constitution put the public interests in the foreground, and provided a simple and prompt method of removal of county executive officers by the governor of the state.

Of the manner in which that power has been exercised there has been but little complaint in the more than eighty years that have passed since the power was first granted. Delegate Becker, of the constitutional convention of 1894, seems to have been of the opinion that the governor should not have an absolute and unconditional power of removal that might be exercised without a sufficient reason, and so he proposed in due form an amendment to the section of the Constitution under consideration, which should insert therein after the word "remove" the words "for good cause shown," but the proposed amendment was rejected, and without debate, so far at the record discloses.

But had there been large complaint concerning the exercise of the power the method of removal imbedded in the Constitution must govern until the people change it. It authorizes the governor to remove, as we have seen, after " giving to such officer a copy of the charges against him and an opportunity of being heard in his defense," and an examination of the record discloses that such requirements of the Constitution were fully complied with in this case.

Therefore, we do not examine into the merits,·for they do not concern the courts, inasmuch as both the power to decide whether Guden should be removed from the office of sheriff, and the responsibility for a right decision, rest solely upon the governor of the state.

The order should be affirmed, with costs.

O'BRIEN, J. I concur with Chief Judge PARKER in the result. My conclusion, however, is based upon grounds somewhat different from those stated in his opinion, and, briefly, my reasons are these : It is provided in section one of article ten of the Constitution that " The Governor may remove any officer, in this section mentioned, within the term for which he shall have been elected ; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense." The ·officers· mentioned in the section are sheriffs, clerks of counties, district attorneys and registers in counties having registers. The power of removal is here given with the limitation that it shall be made upon charges only, a copy of which is to be served upon the officer and an opportunity given to him to be heard in his defense. Inasmuch as the accused officer is entitled to make · a defense and be heard in his own behalf before the removal can be ordered, the proceeding is judicial in nature and character. Any proceeding in which a party is entitled to make a defense and to be heard necessarily involves a judicial inquiry. It is admitted on all sides that before a removal can be made the governor must acquire jurisdiction. There must be a charge of some official misconduct on the part of the

officer and he must have been served with a copy of the charge and given an opportunity to be heard. A mere statement, in writing, of some act or omission on the part of the officer, that in no sense can constitute misconduct, would not be a charge within the meaning of this provision of the Constitution. It is not necessary that the charge be stated with all the precision of a pleading in a court of law or equity. The governor has power to prescribe his own rules of procedure and determine whether the charge is sufficiently specific or otherwise, but there must be some act or omission on the part of the officer stated in the papers, which amounts to official misconduct, and when such a paper is presented to the governor he acquires jurisdiction of the person of the officer and of the subject-matter of the charge. For any error of law or of fact that he may commit in the progress of the investigation there is no power of review in the courts. The courts can inquire with reference to a single question only and that is the jurisdiction; but the power to inquire as to jurisdiction necessarily implies the right to examine into the nature and character of the charge, in order to see whether it is in any proper sense a charge at all within the meaning of the Constitution.

In my opinion, the charges in this case were sufficient to confer jurisdiction upon the governor. In one of the charges presented to him and which appears in the record it is, in substance, alleged that the sheriff abdicated his powers and duties with respect to the appointment of his subordinates to an irresponsible body of men called a patronage committee. That is to say, he entered into an agreement with this committee to make such appointments of subordinates as it determined upon, and that a list of forty persons was furnished to him by this committee to be appointed as his subordinates and that he appointed them. The appointment of these persons, under such circumstances, was an official act relating to the powers and duties of his office. The charge, in substance, is that the sheriff farmed out to an outside irresponsible political body the performance of duties which devolved upon himself. It is

true that the form in which this charge is stated is not according to the strict rules of pleading. The statement is that the sheriff testified to all these facts in a certain examination or proceeding before a judicial officer, but it was perfectly competent for the governor to treat the charge as a distinct averment of the truth of the facts stated by the sheriff in his examination. The form of the charge is a statement of the evidence of the fact rather than the fact itself, but the executive had the power to entertain this charge although it was not formulated according to the technical rules of pleading.

It was not necessary that the order of removal should specify the particular acts for which the removal was made. The order necessarily includes all acts embraced in the charges and covered by the proofs just as the general verdict of a jury includes all the facts comprehended in the issue submitted, and the validity of the judgment indicated by the order of removal is not affected by the circumstance that the executive, instead of specifying the particular acts of misconduct of which the sheriff was charged and found guilty, expressed his reasons in a milder form, namely, that it appeared to his satisfaction that the usefulness of Guden in the office of sheriff of the county is at an end and that he be removed from the office.

GRAY, HAIGHT, VANN, CULLEN and WERNER, JJ. (O'BRIEN, J., in result in memorandum), concur with PARKER, Ch. J.

Order affirmed.