12745

STATE *EX REL.* RICHARDS, GOVERNOR, v. BALLENTINE,
SHERIFF

(150 S. C., 46)

*Attorney General John M. Daniel, Cordie Page, Assistant
Attorney General, Solicitor A. J. Hydrick,* and *W. C. Wolfe,*
for appellant,

Messrs. *Thomas P. Stoney, Norval N. Newell, M. F. Winter,* and *Jas. S. Verner,* for respondent, 

October 12, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The facts of this case are fully stated in the proposed opinion of Mr. Justice Cothran, and I shall not restate them here.

I agree with the conclusion reached in the suggested opinion that Article 15 of the State Constitution makes no provision for the removal of a Sheriff, such officer not being subject to impeachment or to removal upon the address of both houses of the General Assembly, and "there being then 'no mode of trial or removal * * * in this Constitution' for the removal of a Sheriff for the offenses named in Article 3, Section 27, the method of removal is left to the General Assembly, which has spoken in the Act of 1924." 33 St. at Large, page 997. This conclusion is undeniably sustained by Mr. Justice Cothran's excellent discussion of the question and fully supported by the authorities cited by him.

The learned Justice concludes, however, that the Act in question—providing, as it does, for the removal of officers by the Governor and for review of his action by a Circuit Judge—is unconstitutional, for the reasons that (1) if the removal of a Sheriff is an executive function, no appeal could lie from the Governor's action to the Court; and (2)

if such removal is a judicial function, the commission to the Governor of such power was an infraction of the Constitution. I agree with the first, but not with the second, proposition.

In the case of *State v. Ansel*, 76 S. C., 395, 412, 57 S. E., 185, 191, 11 Ann. Cas., 613, the Court said: "It is suggested that a Governor can never be an inferior tribunal, since he is the supreme executive officer. This reason would be impregnable, if the Constitution, which vested the Supreme and Circuit Courts with the judicial power, had at the same time created the Governor a judicial tribunal, or made it his executive function to remove officers for cause after notice and opportunity for hearing. Then it could be said the power of removal, whether judicial or executive, was a co-ordinate power beyond control of the regular Courts, just as the High Court of Impeachment would be. In this case, however, the Governor does not derive his power to remove directly from the Constitution, but by creation of an Act of the Legislature. Therefore, if the power to remove officers is judicial, the tribunal designated to exercise the power is judicial, and must of necessity be an inferior jurisdiction in a legal sense, because the Legislature is wholly without power to create a judicial tribunal which is not inferior to the judicial power vested in the Supreme and Circuit Courts.

"The fact that the power was conferred on the Governor may have force in determining whether the intention was to create the Governor into a judicial tribunal, but, if admitted that the Governor has been created such judicial tribunal by Act of the Legislature, it follows inevitably that with respect to such function he would be subject to review by the superior tribunal. Several reasons are suggested against this view. One is that in case of resistance by the Governor the Court would have no power to enforce its mandate. That is a political reason, not a legal reason. The adequacy of the Court's power to enforce its judgments can never be a true test of jurisdiction. The duty of the Court is to declare the

law, and it must always rely upon the executive department to execute the law declared. In any defiant controversy between the judiciary and either of the other co-ordinate departments, the judiciary would prove weakest. It carries neither purse nor sword. The strength of its mandates must lie in their righteousness, in the confidence the people may have in the knowledge and integrity of the Court, in the necessity to civil liberty that there be a final arbiter as to what is law, in the duty of the executive to enforce that law, and in this last reliance it is not conceivable that there will be any disappointment."

It is clear from the foregoing that, for the removal of an officer, the Legislature may create the Governor a judicial tribunal, and may provide for an appeal therefrom to the Circuit or Supreme Court. It is evident, also, that the Governor, in the present case, derives whatever power is vested in him for the removal of Sheriffs, not from the Constitution, or from the fact that he is the chief executive, but from the Statute itself.

What, then, was the primary purpose of the Legislature in the enactment of the law? Simply to provide a method by which officers guilty of certain offenses might be removed, care being taken to protect the rights of the accused party. For such purpose, it could name the Governor alone, or another, or a board composed of several, of which the Governor might or might not be a member, whose duties would be to determine the questions involved. For reasons satisfactory to itself, the Legislature, after enumerating the offenses for which certain officers might be removed from office, chose to place the removal of such officers, in the first instance, in the hands of the Governor, but carefully provided for various steps, clearly judicial in their nature, to be taken in the hearing or trial for removal. And, as further showing that the entire procedure was to be judicial, the Act provides for an appeal by the officer from the order of the Governor removing him from

office, and requires the Governor, when such appeal is duly made to a Circuit Judge, to make a return to that Court, filing with it the record in the case, including a copy of his order, grounds of removal, evidence in support thereof, etc.

To my mind, when the Act is read and considered as a whole, no other conclusion can be reached than that the Legislature intended to create the Governor, for the purposes of the Act, a judicial tribunal, and that the power vested in him by the law was not executive, nor intended to be so, but purely judicial. This being true, the objections to the constitutionality of the Act are seen to be without merit.

The judgment of this Court is that the order appealed from be reversed, and the case remanded to the Circuit Court for a hearing on the facts.

MR. JUSTICE CARTER, and CIRCUIT JUDGES DENNIS, HENRY, FEATHERSTONE, RICE, MANN, RAMAGE, TOWNSEND, and JOHNSON concur.

MESSRS. JUSTICES COTHRAN and BLEASE, and CIRCUIT JUDGES WILSON, MAULDIN, GRIMBALL, SEASE, and SHIPP dissent.

MR. JUSTICE STABLER, and CIRCUIT JUDGE BONHAM disqualified.

CIRCUIT JUDGE HENRY (concurring) : In concurring in results in the opinion filed herein by Chief Justice Watts, we repeat the comment made in the case of *Sallie Bess, In Re. Ben Bess,* for our reasons for concurring therein, and add in this case:

The Governor has traveled in the path plainly prescribed by the Legislature by virtue of Article 3, § 27, of the Constitution. That the other two modes prescribed by the Constitution for the removal of an officer can only refer to and include state officers is patent, from the fact that it begins with the Governor, the highest officer, and other state executive officers, and by *stopping* with the judiciary, coming down the scale, giving the Legislature power to confer upon the Governor the right to remove other officers below that of the judiciary, who are not state officers.

CIRCUIT JUDGE TOWNSEND (concurring) : In the special proceeding for the removal of incompetent officers, under the Act of March 5, 1924, 33 St. at Large, page 997, the Governor acts in a *quasi*-judicial capacity, as a special statutory tribunal, to ascertain and declare the existence of the statutory cause for removal. From the Governor's decision the officer is allowed the right of appeal to a Circuit Judge, who hears the matter on the merits *de novo,* taking such additional evidence as he shall see fit. The Judge's decision is to be both speedy and final. The procedure is summary under the Statute, which establishes its own process of law. See *State v. Borstad,* 27 N. D., 533, 147 N. W., 380, Ann. Cas., 1916-B, 1015.

The Judge, in passing on the matter, undoubtedly acts as a special statutory tribunal, and his rulings on legal questions therein are subject to review by the Supreme Court on *certiorari. In re. Contested Election Brig. Gen'l,* 1 Strob., 198.

I concur in the opinion filed by the Chief Justice on the first ground therein stated, holding the Act constitutional.

CIRCUIT JUDGE JOHNSON concurs.

CIRCUIT JUDGE FEATHERSTONE (concurring in the result announced in the opinion of the Chief Justice). I concur in the result announced in the opinion of the Chief Justice.

The question of procedure is of so great importance that I think it should be definitely settled by this Court. Is the judgment rendered by the trial Judge "final," as the Act declares it to be; and, if not, is it reviewable, whether by appeal or by writ of *certiorari?*

What are the powers of the Supreme Court under the Constitution? Section 4 of Article 5 of the Constitution reads as follows: "The Supreme Court shall have power to issue writs or orders of injunction, mandamus, *quo warranto,* prohibition, *certiorari, habeas corpus* and other original and remedial writs. And said Court shall have appellate jurisdiction only in cases of chancery, and in such appeals they shall

review the findings of fact as well as the law, except in chancery cases where the facts are settled by a jury and the verdict not set aside, and shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may by law prescribe."

Notice the language, " * * * and shall constitute a Court for the correction of errors at law under such regulations as the General Assembly may by law prescribe." The language is mandatory, and the Court has held repeatedly that the provisions of the Constitution are self-executing.

This being true, when the Legislature, by the Act of 1924, undertook to say that the action of the Circuit Judge on questions of law should be final, did something which it did not have the power to do, and in so far as that provision is concerned "it is in the very teeth" of the Constitution, and hence null and void.

Such a provision cannot be sustained, I think, under the guise of the term "regulation." It is not a regulation, but an effort to destroy both the letter and spirit of the Constitution. It had no more right to say that the Supreme Court could not review the errors of law committed by the Circuit Judge in such special proceeding than it would have the right to pass an Act saying that the Supreme Court could not correct errors of law committed by Circuit Judges in cases tried in the Courts of Common Pleas and General Sessions.

This being true, the next question is: What method shall be pursued in getting the case before the Supreme Court for review? The Legislature has not prescribed the method of review in the Act of 1924, or, to express it in other words, has not regulated or prescribed the mode of procedure in respect thereto, but, on the contrary, forbids review. But there must be some method. It is inconceivable that there is not some way of enabling the Supreme Court to do what the Constitution says it "shall" do.

In the absence of the right of appeal, the method is by the writ of *certiorari,* a method always present when the right

of appeal does not exist. And while it is said in some of the cases that it is discretionary whether or not such writ shall issue, all of the cases hold that a judicial discretion is meant, not an arbitrary or capricious discretion.

. Therefore, when it appears that an error of law apparent on the record has been committed by an inferior Court, it becomes the duty of the Court under the mandate of the Constitution to issue the writ and correct the error of law. I conclude, therefore, that so much of the Act of 1924 as undertakes to deprive this Court of the right to review the action of Judge Bonham is void, and this Court has the right to correct his error in holding the Act unconstitutional by writ of *certiorari*, and not by way of appeal.

In respect to the interesting question whether or not any Court can review the action of the Governor in removing a recalcitrant officer, a recent case with complete annotations is found in 52 A. L. R., 1–33. In the annotation is found a case (*State v. Frazier*, 47 N. D., 314, 182 N. W., 545, 547) which seems to be in point, and from which I quote the following:

"The contention is made that the Governor is immune from judicial control or interference, by reason of his position as chief executive officer, exercising an executive function in a removal proceeding. This might be conceded, for purposes of this case, if the Constitution or the Legislature, in creating the power of removal, had prescribed an arbitrary or solely executive function or removal. * * * Thus, it might be so contended if the Legislature had provided that the officer might be removed without cause, dependent solely upon the exercise of executive discretion. The sovereign power of removal from office is not necessarily an executive function, unless so made by the Constitution and Statutes of the State. This power, formerly at the common law, resident in the King in our State, rests with the people, and evinces its expression in the Constitution or statutory laws. It may be executive, judicial, or legislative, dependent upon

the manner in which the people in the specific instance have allotted or bestowed this power. * * * Thus, the Legislature may exercise the power directly by impeachment proceedings. * * *

"Again the Legislature, pursuant to constitutional provision, might grant this power of removal to the judicial department. * * * Accordingly, it follows that, if the Legislature possesses the power of prescribing the method and manner of appointment to and removal from office, it may allot this power to either the executive department or the judicial department, or to both, and may prescribe the method of its exercise; namely, partly executive, partly judicial, that is, *quasi*-judicial, in its nature. So, when the Governor exercises this power pursuant to the legislative grant, it may not be said that the limitations placed on the exercise of this power is an interference with an executive function, when such power was not thereto possessed as an executive function, and when, further, it is not granted to him as a purely executive function. * * * This Court, therefore, has already adopted, without dissent, the principle that a legal cause in such case must exist and must be established at a hearing. It is merely trite to state that a legal cause is a judicial cause. It follows, accordingly, that the Governor, in exercising his power in such removal proceeding necessarily acts in a *quasi*-judicial manner. That his orders, *quasi*-judicial in character are subject to judicial jurisdictional review and that such review does not serve to interfere with any purely executive prerogative."

Mr. Justice Cothran (dissenting) : This matter was first presented to the Court at the April session *as an appeal* by the State from a decree of his Honor, Judge Bonham, presiding in the First Circuit, reversing an order by the Governor removing the respondent, Ballentine, from the office of Sheriff of Berkeley County. His Excellency proceeded under the Act of March 5, 1924; 33 St. at Large, page 997, entitled "An Act to provide for the removal of certain offi-

cers." The appeal by Ballentine from the order of the Governor was taken, also, under the provisions of that Act.

Upon the filing of the decree of Judge Bonham, reversing the order of the Governor, the State gave notice of intention to appeal therefrom to this Court. The appeal was duly perfected, and was presented, as stated, at the April session, at which time counsel on both sides were heard in argument. No objection or suggestion at that time was entered that a review of Judge Bonham's decree could not be presented *by appeal,* or that the Act in question was in any particular violative of the provisions of the Constitution; in fact, the respondent invoked the graces of that Act for his relief, pursued the right of appeal to a Circuit Judge therein provided for, received a favorable decision from Judge Bonham, and was sitting steady against the wind.

The facts connected with the controversy appear as follows:

On September 25, 1928, the Governor issued a rule requiring Ballentine to show cause before him why he should not be removed from office, on account of misconduct in office and neglect of duty. The rule was made returnable on October 3, 1928, but was continued until November 3, 1928, when the Sheriff made return to the rule. A hearing was had before the Governor, testimony was taken, and on November 10, 1928, the Governor made an order removing the Sheriff from office upon the grounds of incapacity, misconduct, and neglect of duty. An appeal from this order was perfected by Ballentine under the provisions of the Act of March 5, 1924, 33 Stat. at Large, page 997, under which the Governor acted, to his Honor, Judge Bonham, who was then presiding in the First Circuit. The matter was heard before him at St. Matthews, in said circuit, on November 28, 1928, upon the record as made before the Governor, and upon additional testimony taken by the Judge. Judge Bonham filed his decree under date of January 31, 1929; in it he did not consider or pass upon "the correctness of the findings of fact by the

Governor," for the reason, as stated by him, in the view that he took of the issues involved, it was not necessary to do so. The decree reversed the order of removal made by the Governor, upon the ground that the Act of March 5, 1924, 33 Stat. at Large, page 997, "has no application to the office of Sheriff, and does not give to the Governor the power to remove C. P. Ballentine from the office of Sheriff of Berkeley County."

On May 3, 1929, this Court filed an opinion reversing the decree of Judge Bonham, and remanding the case for a hearing upon the merits of the appeal from the order of the Governor by the resident or presiding Judge of the First Circuit, for the reason that a decision of the merits of that appeal had been specifically waived by Judge Bonham. Thereafter, on May 11th, the respondent, Ballentine, filed a petition for a rehearing, contending, among other things, that the Act of 1924 *contained no provision for an appeal* from such an order as was Judge Bonham's, and that this Court was consequently without jurisdiction in the matter.

On June 7th, this Court, entertaining serious doubts upon the foregoing contention of the respondent, granted an order for a rehearing, and ordered it set down for reargument at the June session. On June 10th, the first day of the session, counsel representing the State made an application to this Court for a writ of *certiorari,* directing that all proceedings in the matter be certified in this Court for a review. The application was granted, and the matter ordered set down for argument on June 14th. The transcript of record in the appeal case was ordered to be considered as the certified copy of the proceedings ordered in the *certiorari* to be presented.

On June 14th, both matters, the appeal and the writ of *certiorari* were called up. Counsel for the respondent, Ballentine, taking the position that the State, in asking for the writ, practically conceded that it had no remedy by appeal, moved to quash the writ upon various grounds, summarized by them as follows:

"(1) That there is no way to review the decision of his Honor, Judge Bonham, in this matter, either by appeal, *certiorari,* or otherwise, because the Act in question says that the judgment of the Circuit Judge is final.

"(2) That the Act under which the Governor seeks to remove your respondent is unconstitutional, null and void, for the following reasons:

"(a) Because the Act attempts to confer upon His Excellency, the Governor, judicial functions.

"(b) Because the Act gives a Circuit Judge the right to review and pass upon an executive or administrative act of the Governor."

While it is exceedingly doubtful that the respondent is in a position to question the constitutionality of the Act of 1924, under the circumstances detailed, the matter is of such extreme importance to the public interests that the Court will waive the technical objection and consider it. The conclusion reached, that it cannot be sustained, renders negligible the questions whether a review of Judge Bonham's decree is available to the State, either by direct appeal or by writ of *certiorari,* as well as the question of the Court's disposition of either.

The Act of 1924 contains two very important provisions: (1) That the Governor may remove certain officers, ascertained to his satisfaction to have been guilty of misconduct, neglect of duty, or incapacity, after due notice and a hearing; (2) provided, that the removed officer shall have the right of appeal to a Circuit Judge, who shall determine the issues of law and fact, upon the record as made before the Governor, and upon such additional evidence as he shall see fit to allow.

We do not think that there can be a question as to the constitutionality of the first part of the Statute, the power of removal. Article 3, § 27, of the Constitution provides: "Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law,

*when no mode of trial or removal is provided in this Constitution."*

The necessary conclusion of the ruling of his Honor, Judge Bonham, is that a mode of trial or removal of a county Sheriff, for incapacity, misconduct, and (or) neglect of duty, *is* provided in the Constitution. If it *is* thus provided, the mode of trial or of removal prescribed must be pursued; if it is not, and the Act of 1924 is otherwise free from objection, the Governor has the authority to act under the provisions of that Statute.

The sections of the Constitution relied upon to sustain the contention that *it has* made such provision will be considered. The Act of 1924 specifically exempts from its operation officers whose removal is provided for in Article 4, § 22, and in Article 15, § 4.

In order to establish the contention of the respondent, Sheriff, that the Constitution has provided for the removal of a county Sheriff, it must be made to appear that in one or the other of these sections such provision has been made, for they are the only ones in the Constitution which treat of the matter at all.

Article 4, § 22, is as follows: "Whenever it shall be brought to the notice of the Governor by affidavit that any officer who has the custody of public or trust funds is probably guilty of embezzlement or the appropriation of public or trust funds to private use, then the Governor shall direct his immediate prosecution by the proper officers, and upon true bill found the Governor shall suspend such officer and appoint one in his stead, until he shall have been acquitted by the verdict of a jury. In case of conviction the office shall be declared vacant and the vacancy filled as may be provided by law."

Certainly this section makes no provision for the removal of a Sheriff upon a general charge of "incapacity, misconduct, or neglect of duty," referred to in Article 3, § 27. It provides for a special proceeding upon a particular charge of

misconduct, the embezzlement of public or trust funds. The Governor is required to direct the immediate prosecution of the offending officer, and upon a true bill being found to suspend him and appoint another, until the acquittal of the officer charged. Upon his conviction the office shall be declared vacant (by the Court, we assume, and not by the Governor), and the vacancy filled as may be provided by law. Even in such a particular offense, it does not appear that the power of removal is vested in the Governor or otherwise provided for except upon a trial and conviction of the officer.

In *McDowell v. Burnett,* 92 S. C., 469, 75 S. E., 873, 875, the Court, referring to this section, said: "This applies to the removal of all officers, including Magistrates, except the Governor; but, being limited to the misconduct of embezzlement, it has no application to other forms of misconduct or to incapacity or neglect of duty."

Article 15, § 4, is as follows: "For any willful neglect of duty, or other reasonable cause, which shall not be sufficient ground of impeachment, the Governor shall remove any executive or judicial officer on the address of two-thirds of each house of the General Assembly: Provided, that the cause or causes for which said removal may be required shall be stated at length in such address, and entered on the journals of each house: And provided further, that the officer intended to be removed shall be notified of such cause or causes, and shall be admitted to a hearing in his own defense, or by his counsel, or by both, before any vote for such address; and in all cases the vote shall be taken by yeas and nays, and be entered on the journals of each house respectively."

This section is found in the article entitled "Impeachment." Strangely enough, although it provides for the removal of any executive or judicial officer, "for any willful neglect of duty, or other reasonable cause, which shall not be sufficient ground of impeachment," it nowhere defines what shall be deemed such sufficient ground of impeachment.

But, as is said in 46 C. J., 1102: "It is immaterial that there is an absence of constitutional or statutory definition of impeachable offense. The grant of the general power of impeachment properly and sufficiently indicates the causes for its exercise. Under the common law the wrongs justifying impeachment need not be statutory offenses, or even offenses against any positive law. Generally speaking they are designated as high crimes and misdemeanors."

And in *Ferguson v. Maddox,* 114 Tex., 85, 263 S. W., 888, 892: "The power granted to the House to 'impeach,' and the Senate to try 'impeachment,' carries with it, by inevitable implication, the power to the one to prefer and to the other to try charges for such official delinquencies, wrongs, or malfeasances as justified impeachment according to the principles established by the common law and the practice of the English Parliament and the parliamentary bodies in America."

In this article, the officers who are made subject to impeachment are "the Governor and all other executive and judicial officers," and the question is whether the county Sheriff is an executive officer, within the meaning of that term, used in the article on "Impeachment." If he can be so considered, the lumbering process of impeachment must be invoked, should he be guilty of such high crimes and misdemeanors as would warrant the impeachment of the Governor, or a Justice of this Court, or a Circuit Judge, or the process of an address by the General Assembly for lesser offenses. In view of the fact that the government is divided by the Constitution into the three familiar departments, and the Sheriff is not referred to in the article devoted to the executive department, and the universal acceptance of the term as applicable to State officers, we cannot think that the convention intended, by the term "executive," to put Sheriffs in the class with State officers and judges. The convention evidently had in mind the three departments of the government, and, as impeachment of members of the legislative de-

partment was considered inadvisable, at least, the other departments were referred to, the executive and judicial.

In the case of *McDowell v. Burnett,* 92 S. C., 469, 75 S. E., 873, 876, the Court *en banc,* speaking through Mr. Justice Woods, presents an argument which reinforces the foregoing conclusions: "Search for the line of distinction which the framers of the Constitutions of 1868 and 1895 intended to draw, in the light of the history of the subject in this State and of judicial authority in this country, leads to this conclusion: Every executive and judicial officer whose authority and jurisdiction extends over the entire State, in whose official conduct the entire State is concerned, and whose office was created by the Constitution, or created by Statute and filled by election by the people at large, is removable by impeachment, or by the Governor on the address of the General Assembly, or by conviction of embezzlement or of appropriation of trust funds in these modes only. All other officers are subject to removal under the provisions of the Statute law of the State, or under the common law, where that is applicable."

It seems clear, therefore, that as a Sheriff would not be subject to impeachment, or to removal upon the address of both houses of the General Assembly, Article 15 cannot be said to have made provision for his removal. There being, then, "no mode of trial or removal * * * provided in this Constitution" for the removal of a Sheriff for the offenses named in Article 3, § 27, the method of removal is left to the General Assembly, which has spoken in the Act of 1924.

The second important provision in the Act—that is, for an appeal from the order of the Governor, removing an officer, to a Circuit Judge, who is vested with the power of reversing the order of the Governor (what was actually done in the present case)—is unfortunately the reef upon which the vessel has stranded. If the power of reviewing upon appeal such an order of the Governor had been confided to the

*Court of Common Pleas,* such grant would have been beyond the power of the Legislature; *a fortiori* would the grant to *a Circuit Judge be.* He certainly has more restricted powers than the Court over which he presides.

Article 5, § 15, of the Constitution provides: "The Courts of Common Pleas * * * shall have appellate jurisdiction in all cases *within the jurisdiction of inferior Courts,* except from such inferior Courts from which the General Assembly shall provide an appeal directly to the Supreme Court."

If the commission of the power had been to the Court of Common Pleas, it could be sustained only upon the theory that the action of the Governor was the exercise of the jurisdiction of an inferior Court, and that he was acting in a judicial capacity; for the appellate jurisdiction of such Court is specifically limited by the Constitution to "cases within the jurisdiction of inferior Courts."

This follows inevitably from the decision of this Court in the case of *Ex Parte Evans, 72* S. C., 547, 52 S. E., 419, 420. In that case Mrs. Evans applied under the city ordinance to the fire commissioners for a permit to erect a house at a certain place; the commissioners granted the permit, but later revoked it. She then applied to the city council, which sustained the commissioners and refused the permit. Mrs. Evans then appealed to the Circuit Court from the order of the city council refusing the permit. The Circuit Court reversed the action of the city council, and allowed the petitioner to proceed with the erection of the proposed building. The objecting neighbor then appealed to the Supreme Court, upon the grounds, among others, that the Circuit Court had no jurisdiction to entertain the appeal of Mrs. Evans from the action of the city council, for the reason that the city council, in the particular matter, *was not acting as a Court of inferior jurisdiction,* from which alone an appeal could be taken. In disposing of the question of jurisdiction the Court said:

"We are of the opinion that the Circuit Court was without jurisdiction to entertain the appeal sought to be taken from the action of the city council. Section 15, Art. 5, of the Constitution, gives to the Court of Common Pleas appellate jurisdiction 'in all cases within the jurisdiction of inferior Courts, except from such inferior Courts from which the General Assembly shall provide an appeal directly to the Supreme Court.' Is this a *case* within the jurisdiction of the city council as an inferior *court?* Judge Story, in his Commentaries on the Constitution (Volume 3, page 626) says: 'The essential of appellate jurisdiction is that it reviews and corrects the proceedings in a case already instituted, and does not create that cause in reference to judicial tribunals; an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been instituted in and acted upon by some other Court whose judgment or proceedings are to be reviewed. This appellate jurisdiction may be exercised in a variety of forms, and, indeed, in any form which the Legislature may choose to prescribe, but still the substance must exist before the form can be applied to it.' In order, therefore, to give the Circuit Court appellate jurisdiction in the matter appealed from the city council, it must appear that the city council was, in the matter sought to be reviewed, acting in a judicial capacity, as distinguished from doing a ministerial, administrative, or discretionary act."

The Court concluded:

"In so far as the city council may assume to grant or refuse such a permit, their action is administrative rather than judicial. Their decision in such matters is not binding in the sense of a judgment of a Court. The application for a permit is *ex parte*. If objection be offered, that does not raise a controversy between the petitioner and the objector which is submitted to the judicial authority of the city council. As the city council was not acting in the capacity of a Court in the premises, there was no case before the city council for

which a right of appeal is saved in Article 5, § 15, of the Constitution."

The action of the Governor was not only not that of an inferior Court, but we think it clear that it was the exercise of an executive function; the exercise of that function dependent upon his ascertainment of certain facts, while in a measure a judicial exercise, does not convert an executive function into a judicial.

In *State Ex Rel. Rawlinson v. Ansel,* 76 S. C., 395, 57 S. E., 185, 192, 11 Ann. Cas., 613, the petitioners applied for a writ of *certiorari* to review the action of Governor Ansel in removing them as members of the board of directors of the State dispensary. In discussing the question whether in so doing Governor Ansel exercised executive or judicial functions, the Court said:

"The Legislature has not invested the Governor with any judicial function in the matter of removing the dispensary officers. 'The mere fact that an officer exercises judgment in deciding the matter before him does not make his decision of a judicial character so that it may be reviewed by *certiorari.*' Throop on Pub. Off., § 802, and cases cited. The power of removal was vested in the Governor as Governor, and is essentially a political, governmental, executive duty, and therefore beyond the control of the judiciary. In the case of *In Re. Guden,* 171 N. Y., 529, 64 N. E., 451, the New York Court of Appeals held that 'Const., Article 10, Section 1, vesting power in the Governor to remove officers designated therein, on charges and after hearing, is executive, and not judicial, and the exercise of that power is not reviewable by the Courts.' "

In the case of *In Re Guden,* 171 N. Y., 529, 64 N. E., 451, 452, referred to in the *Rawlinson case,* next above, the Court, per Chief Justice Parker, said:

"The Constitution further specifically provides—and has since 1821 in effect, and since 1846 in precisely the same words—that 'the Governor may remove any officer, in this

section mentioned (Sheriffs, Clerks of counties, District Attorneys and Registers in counties having Registers), within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense.' Article 10, § 1. It does not require argument to persuade the mind that the power thus ·conferred is executive, not judicial, and that it was intended to be vested exclusively in the Governor."

The provision of the New York Constitution, as appears, is quite similar to that in the Act of 1924. In 1 Cooley, Const. Lim. (8th Ed.), 229, it is said: "The Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply."

If we should be in error in holding that the action of the Governor was the exercise of an executive function, and that it was the judgment of an inferior Court, the exercise of a judicial function, the bar of the Constitution which requires the separation *forever* of the three departments of government would be insuperable; judicial authority cannot be vested in the Chief Executive.

In 1 Cooley, Const. Lim. (8th Ed.), 221, it is said: "And, on the other hand, the Legislature cannot confer upon him [the Governor] judicial authority * * * or clothe him with any authority, not executive in its nature, which the Legislature itself, under the Constitution, is restricted from exercising."

So that it matters not whether we consider that under the Act the Governor was charged with an executive or a judical function; if executive, he was not an inferior Court; if judicial, the commission to him of such power was an infraction of the Constitution.

The difficult and often perplexing question remains to be decided: Whether, a part of a Statute being declared un-

constitutional, the entire Statute is invalidated; or whether that part which is not amenable to the constitutional infirmity may remain of force.

Judge Cooley, at page 361 of his work on Constitutional Limitations (8th Ed.), thus declares the test:

"When, therefore, a part of a Statute is unconstitutional, that fact does not authorize the Courts to declare the remainder void also, *unless all the provisions are connected in subject-matter, depending on each other, operating for the same purpose,* or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other. * * * If a Statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. *But if its purpose is to accomplish a single object only,* and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so *mutually connected with and dependent on each other,* as conditions, consideration, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditioned, or connected must fall with them."

When the fact is considered that the office of Governor is intensely a political one, that his election is not infrequently the result of a clash between opposing parties or factions, and that animosities perhaps unfounded are engendered, it is but natural to assume that the practically arbitrary power vested in him by the constitutional part of the Act would not have been bestowed, without the salutary check of the provision for an appeal. Certainly one cannot be assured that the first would have been enacted without the second. The two together appear as parts of a whole, intended to accomplish a certain object with as great fairness as could be conceived

to' the accused; they seem to answer every essential of the definition of Mr. Cooley.

We cannot conceive of a clearer illustration of the legislative jealousy of despotic power than the simple and fair limitation attempted to be created. If it should perish, as appears inevitable, the absolute power of removal, which may be allowed to remain, would be a mockery of the legislative purpose; that which was bestowed as a qualified power will have become, what they intended it should not be, an absolute one.

MR. JUSTICE BLEASE, and CIRCUIT JUDGES WILSON, MAULDIN, GRIMBALL, SEASE, and SHIPP concur.