8322

## McDOWELL v. BURNETT, COUNTY SUPERVISOR.

1. A MAGISTRATE appointed by the Governor and confirmed by the Senate holds his term of office for two years. Section 983 of Code of 1902 providing that such appointment might be made for an unexpired term is in violation of the Constitution.

2. OFFICERS—CONSTITUTIONAL LAW—IMPEACHMENT.—Every executive and judicial officer whose authority and jurisdiction extends over the entire State and whose office was created by the Constitution or created by statute and filled by election by the people at large is removable by impeachment or by the Governor on the address of the General Assembly or for conviction of embezzlement or of misappropriation of trust funds. All other officers are subject to removal under the provisions of the statute law or under the common law, where that is applicable.

3. Ibid.—Ibid.—Ibid.—Magistrates are not such. judicial officers as are removable under the impeachment article of the Constitution, but are removable in such manner as the General Assembly may provide.

4. Ibid.—Ibid.—Magistrate.—Under the Constitution and statutes of the State the Governor: (a) Has no power to remove magistrates serving for a full term except after trial and conviction as provided in the Constitution and statutes relating thereto. (b) Has the power to suspend magistrates when a showing has been made to him by affidavit that the magistrate is probably guilty of embezzlement and a true bill has been found. (c) Has the power of suspension for incapacity, misconduct or neglect of duty subject to the requirement that he should submit the suspension to the Senate at its next session for its approval or disapproval. (d) Has no power to suspend except upon notice and a hearing.

Messrs. Chief Justice Gary, Justice Watts, Circuit Judges Sease and Frank B. Gary think McDowell entitled to his salary for the time served by him.

Petition in the original jurisdiction of this Court by B. L. McDowell for writ of mandamus against T. C. Burnett, county supervisor, and F. Graham Payne, county treasurer. W. H. Kerr was made a party by order of the Court. The case was sent to the Court *en banc* by order Supreme Court June 7, 1912.

*Messrs. D. H. Magill* and *Geo. T. Magill,* for petitioner.

*Messrs. Giles & Ouzts,* for Respondents Burnett and Payne.

*Messrs. Grier, Park & Nicholson,* for Respondent Kerr, cite: *Term of office of magistrate:* Con., art. V, sec. 20; Code 1902, 982, 983. *Is it a legislative or a constitutional office?* Art. V, sec. 20, 21, 23 of Con.; 44 S. C. 493. *Was removal of Kerr effectual?* 44 S. C. 493; 4 S. C. 178; 9 S. C. 5; 14 S. C. 367, 191; 1 McC. 152; 14 S. C. 371; 49 Col. 407; 37 Col. 614; 76 S. C. 395; Code 1902, 982; 25 Ency. 438; 2 Bay. 105; 1 Bay. 354; 43 S. C. 161. *Can*

*Court direct salary paid to one when General Assembly has directed it paid to another?* 23 Ency. 346 ; 26 Cyc. 1372.

September 21, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The important question presented in this case is whether the Governor of the State has the power, at his discretion, to remove from office a magistrate whose appointment has been confirmed by the Senate. The duty of the Court to pass on the limitations of the power of the General Assembly or the chief executive of the State is one of great delicacy, to be entered upon with the greatest deliberation and with care to find in the law support for the legislative action or the action of the chief executive if it be possible. While several provisions of the Constitution and a number of the statutes are to be examined and reconciled in the light of the legal history of the State, we venture to think that the correct solution may be made evident.

The question arises under a petition filed by B. L. McDowell asking the Court to issue a writ of mandamus requiring the supervisor of Greenwood county to issue, and the county treasurer to pay, a check for his salary as magistrate. An order was made requiring the defendants to show cause why the writ should not be issued. Afterwards W. H. Kerr, who claimed to hold the office of magistrate against McDowell, was made a party by order of the Court. 90 S. C. 400. Returns were made which were not traversed.

The facts appear from the petition, returns, and from an agreed statement submitted by counsel. W. G. Austin, whose term of office as magistrate began in 1909, died during the session of the General Assembly of 1910. W. H. Kerr was appointed and his appointment was confirmed by the Senate at the same session.

We have held in the case of *State ex rel. Attorney General v. Bowden et al., ante* 393, that sec. 11 of art. V of the Con-

stitution relating to vacancies and unexpired terms of elective judicial officers has no application to magistrates, who are appointive officers. As the Constitution provides that magistrates "shall hold their offices for the term of two years and until their successors are appointed and qualified" (article V, section 20), when Kerr was appointed during a session of the Senate and confirmed by the Senate and qualified, his tenure was not for an unexpired term, but for a full term from the date of his confirmation. The effort of the General Assembly to limit the tenure in such a case to the unexpired portion of the predecessor's term by section 983 of the Civil Code, being inconsistent with the Constitution, is without effect. The Court has so held in several cases: *Wright* v. *Charles,* 4 S. C. 178; *Whipper* v. *Reed,* 9 S. C. 5; *Macoy* v. *Curtis,* 14 S. C. 367; *Simpson* v. *Willard,* 14 S. C. 191; *Smith* v. *McConnell,* 44 S. C. 493, 22 S. E. 721.

The two years from the date of Kerr's confirmation did not expire until the session of the Senate in 1912. On 25th of February, 1911, the Governor issued a commission to J. W. Canfield and wrote Kerr, "your successor having been appointed your commission is hereby revoked and made null and void." Kerr refused to surrender the office and retained his books and records and continued to exercise the duties of magistrate. Thereafter, on 21st of March, 1911, the Governor wrote Kerr a formal notice of removal as follows:

"I am informed that you continue to act as magistrate. I have already advised you that your commission has been revoked, and while I had hoped you would retire gracefully, I now repeat to you that you are hereby removed from the office of magistrate for neglect of duty, having refused and failed to make your monthly statement in writing to the auditor and treasurer of the county of Greenwood."

Canfield sent his resignation to the Governor in May, 1911, whereupon the Governor issued a commission to McDowell, the petitioner. As Kerr's term had not expired when these appointments of Canfield and McDowell were made neither of them could be sustained on the ground that it was made to fill a vacancy arising from the expiration of Kerr's term of office.

But the Governor gave Kerr formal notice of removal by the revocation of his commission; and if the law has invested the Governor with the power to remove magistrates serving for the full term at his discretion, a vacancy was created by removal, the appointments of Canfield in February, 1911, and of McDowell in May, 1911, when Canfield resigned, were valid and McDowell would be entitled to the salary of the office until the end of the session of 1912, when the Senate refused to confirm his appointment. The inquiry into the power of the Governor to remove requires a detailed examination of the constitutional and statute law of the State.

The first provision in the Constitution in respect to the removal of officers is found under the head of "Legislative Department" and is in these very general terms:

"Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law, when no mode of trial or removal is provided in this Constitution." Article III, section 27.

It will be observed that the provision is mandatory, in that it requires that officers *shall* be removed in such manner as may be provided by law, when incapacity, misconduct or neglect of duty has been legally shown to the removing power. It was held, however, in *Sanders* v. *Belue*, 78 S. C. 171, 58 S. E. 762: "The requirement that officers shall be removed for incapacity, official misconduct or neglect of duty in such manner as may be provided by law, by no means implies abrogation of the general rule

of law above stated, that an appointive officer may be
removed at the pleasure of the officer who appointed him."

This section, it is to be remarked, further leaves to the
legislative department the discretion to provide the manner
of the removal, and this includes the designation of the
person or tribunal who shall have the power of removal,
and the procedure by which such person or tribunal shall
have a hearing and ascertain the fact of incapacity, miscon-
duct or neglect of duty, except when a mode of trial or
removal·is provided—that is a person or tribunal desig-
nated and a procedure indicated—in subsequent provisions
of the Constitution.

The first question, then, is whether a mode of trial or
removal of magistrates has been laid down in the Constitu-
tion.    There are three sections providing modes of trial
and removal of officers.    Article IV, section 22, reads as
follows: "Whenever it shall be brought to the notice of the
governor by affidavit that any officer who has the custody
of public or trust funds is probably guilty of embezzlement
or the appropriation of public or trust funds to private use,
then the governor shall direct his immediate prosecution by
the proper officer, and upon true bill found the Governor
shall suspend such officer and appoint one in his stead, until
he shall have been acquitted by the verdict of a jury.    In
case of conviction the office shall be declared vacant and the
vacancy filled as may be provided by law."    This applies to
the removal of all officers, including magistrates, except the
governor, but being limited to the misconduct of embezzle-
ment, it has no application to other forms of misconduct or
to incapacity or neglect of duty.

The other sections are those relating to impeachment and
removal from office upon address of the General Assembly,
and they are very broad in their terms.    They are found in
article XV, under the head "Impeachment:"

Section 3. "The Governor and all other executive and
judicial officers shall be liable to impeachment; but judg-

ment in such cases shall not extend further than removal from office. The person convicted shall, nevertheless, be liable to indictment, trial and punishment according to law.

Sec. 4. "For any wilful neglect of duty, or other reasonable cause, which shall not be sufficient ground of impeachment, the Governor shall remove any executive or judicial officer on the address of two-thirds of each house of the General Assembly. * * * "

If the convention meant to include magistrates in the term "all other executive and judicial officers," then magistrates could be removed for incapacity, misconduct or neglect of duty only by impeachment, or by the Governor on address of two-thirds of each house of the General Assembly. In the widest and usual meaning of the words, "all other executive and judicial officers" would include every officer of the State not of the legislative department from the highest to the most insignificant. Yet, even if sections 3 and 4 of article XV stood alone, it would hardly be reasonable to suppose that the framers of the Constitution meant to use the words in such a broad sense that every petty officer of the State and county, except in case of conviction of embezzlement, should be subject to impeachment and could be removed only by impeachment or address of two-thirds of the General Assembly. But they do not stand alone, and it must be that "all other executive and judicial officers" was meant in some limited sense, for section 27 of article III clearly contemplates the removal of officers of some kind in a manner other than by impeachment, address of the General Assembly, or conviction of embezzlement. That section must have some meaning, and its meaning, if possible, must be reconciled with the article relating to impeachment. In other words, if both provisions are to be given effect, there must be a line of distinction somewhere between impeachable executive and judicial officers and those smaller local officers subject to removal under the statutes of the State or the common law.

The use of such general terms as "all executive and judicial officers," "all civil officers" and the like in the impeachment articles of constitutions, where they must have been meant to have some limited meaning, is one of the most curious anomalies of legislation. However difficult the task, the Court must try to find the line of distinction which the convention probably had in mind and mark that as the true line. In essaying the task, the primary principle must be kept in view that, in construing the Constitution of the State, the Court should not take the liberty of limiting the meaning of plain language, used without express limitation, further than it can be made plain with reasonable certainty that such limitation was intended.

On first impression it may seem logical to hold the incumbents of all officers created by the Constitution removable by impeachment, and the incumbents of offices created by the General Assembly subject to removal in such manner as the General Assembly may provide. But this distinction would lead to results which could not have been intended, for under it not only magistrates, but solicitors could be removed only by impeachment, legislative address, or on conviction of embezzlement, and even sheriffs and coroners would fall under the rule except for the single offense of allowing a prisoner to be taken by a mob and injured through the negligence, permission or connivance of the officer.

Search for the line of distinction which the framers of the Constitution of 1868 and 1895 intended to draw, in the light of the history of the subject in this State and of judicial authority in this country, leads to this conclusion: Every executive and judicial officer whose authority and jurisdiction extends over the entire State—in whose official conduct the entire State is concerned—and whose office was created by the Constitution, or created by statute and filled by election by the people at large, is removable by impeachment or by the Governor on the address of the General

Assembly or by conviction of embezzlement or of appropriation of trust funds and in these modes only. All other officers are subject to removal under the provisions of the statute law of the State or under the common law where that is applicable.

The Constitution of 1790 provided that "the Governor, Lieutenant Governor and all the civil officers shall be liable to impeachment." Article V, section 3.

Under this provision it was held in *State* v. *O'Driscoll,* 2 Tread. 713; 3 Brev. 576, decided in 1815, that a clerk of the court was subject to impeachment, the Court saying as to the procedure by impeachment: "It is not pretended that there is any other which is authorized to disqualify State delinquents from holding offices of trust or profit; 'all the civil officers' (which is the phrase of the Constitution), must be understood to mean all public officers, holding civil offices of any grade of honor, trust or profit under this State. If the purpose of the prosecution is to punish them officially, or for any misdemeanor in office, or remove them from office, or disqualify them from holding offices of honor, trust and profit, and not merely to punish them as criminal offenders in the ordinary course of justice, the party must be proceeded against by impeachment, and in no other mode; at all events, he may be so proceeded against, although he may be liable to other modes of prosecution."

To remedy the inconvenience of the removal of local officers by impeachment and to dissipate all doubt as to whether they could be removed otherwise, in 1828 the impeachment article of the Constitution of 1790 was amended as follows:

Section 4. "All civil officers, whose authority is limited to a single election district, a single judicial district, or part of either, shall be appointed, hold their office, be removed from office, and in addition to liability to impeachment, may be punished for official misconduct, in such manner as

the legislature, previous to their appointment, may provide."
The same provision is found in the Constitution of 1865.

Under this amendment of the Constitution of 1790, the
General Assembly, by the statute of 1829, provided for the
removal by the Governor, after indictment and conviction
of official misconduct, of "any public officer hereafter to be
elected or appointed whose authority is limited to a single
election or judicial district." (6 Stat. 390.)

Although the Constitutions of 1790 and of 1865 were
supplanted by that of 1868, this statute has remained a part
of the law of the State, and with insignificant verbal change,
is now embodied in section 388 and the first sentence of sec-
tion 389 of the Criminal Code. Thus we find a legislative
declaration running from 1829 to a very late day that
"officers whose authority is limited to a single election or
judicial district" may be removed without impeachment.
The validity of sections 388 and 389 of the Criminal Code
and of trials thereunder of a magistrate and a probate judge
was recognized in *State* v. *Tarrant*, 24 S. C. 593; *State* v.
*Green*, 52 S. C. 520, 30 S. E. 683.

Not only so but this line of cleavage on the subject of
removal from office between local officers and all officers
having jurisdiction over the entire State has been followed
in many other statutes, enacted at various times through
the course of many years. Among these are section 381 of
the Criminal Code for the removal of any county officer,
section 383 for the removal of clerks of court, sheriffs and
magistrates, sections 395 and 403 for the removal of
sheriffs, section 410 for the removal of magistrates, section
416 for the removal of constables, and section 393 for the
removal of solicitors.

This apparent legislative construction, though not bind-
ing on the Court, is entitled to great consideration. It was
departed from, but to a very limited extent, in *State* v.
*Ansel*, 76 S. C. 395, 57 S. E. 185. The statute provided
that the board of directors of the State dispensary should be

elected by the General Assembly and that the term of office should be "for two years unless sooner removed by the Governor." It was held that the Governor could remove, and that the members of the board were not such officers as were subject to impeachment under the Constitution, although they had general charge of the State's entire interests in the sale of liquor. The important consideration was that these dispensary directors held offices not only created by the General Assembly, but filled by the election of the General Assembly; and it was reasonable to hold that officers so entirely the creatures of the General Assembly were not of such dignity as to be ranked with officers subject to impeachment, and that they could be removed as the General Assembly should direct. The same reasoning and rule would apply with even greater force to offices created by the General Assembly and filled by appointment of the governor under legislative authority.

But there is no reason to depart from the rule recognized and followed in the entire history and scheme of legislation on the subject to the extent of holding that offices created by the General Assembly and filled by election of the people at large do not fall within the class whose incumbents are removable by impeachment. On the contrary, when the people at large have chosen by election an officer charged with duties affecting the interests of the entire State, such an officer is responsible to all the people, and there are the strongest reasons why the commission received from the people should not be annulled by removal, except in the solemn method of an impeachment trial before a body representative of all the people. It would be an unwarranted, not to say arbitrary, stretch of judicial authority to hold that such an officer is not embraced in the constitutional description "all other executive and judicial officers."

The few precedents on the subject indicate perplexity of the Courts, but they also indicate approval of the line between impeachable and nonimpeachable officers which we

have stated.  The Supreme Court of Massachusetts, construing a clause of the Constitution providing for impeachment proceedings "against any officer or officers of the Commonwealth," held that it was not intended to apply to local offices created either by the Constitution or the statutes, but to "officers elected by the people at large, or provided for in the Constitution, for the administration of· matters of general or State concern."  Opinion of the Justices, 167 Mass. 599, 44 N. E. 118.  This case, it will be observed, expressly lays down the line of distinction we have adopted as required by our legislation and decisions.

The Constitution of Wyoming provided for impeachment of the "Governor and other State and judicial officers."

In *State* v. *Grant,* 14 Wyo. 41, 81 Pac. 795, 82 Pac. 2, 116 Am. St. Rep. 982, the Courts in holding that the provision was not applicable to the office of superintendent of one of the water divisions of the State, did not lay down any line of distinction, but made these general observations: "We are strongly inclined to the opinion, without deciding the point, that the officers liable to impeachment are the Governor and other State officers mentioned in section 11, article IV, of the Constitution, which does not include the office in question.  Certainly, and it has generally been so considered, that only the superior executive and judicial officers of a State are subject to impeachment, and we have found no case where an officer holding by appointment, or an inferior officer of any kind, has been held subject to impeachment."  In *State* v. *Hewitt,* 3 S. D. 187, 44 Am. St. Rep. 788, 52 N. W. 875, 16 L. R. A. 413, the question was whether the trustee of a State college was an impeachable officer under the Constitution, providing for impeachment of "the Governor and all other State and judicial officers except county judges, justices of the peace and police magistrates."  The Court in deciding that he was not, said: "We are of the opinion that the term 'State officers,' as used in said section,

includes only such general officers as immediately belong to one of the three constituent branches of the State government. * * * The constitutions of many of the States contain the same language as our own, defining what officers are subject to impeachment, but, so far as we have observed, such language has not been taken to include officers who hold by appointment either by the Governor or some supervising board, authorized to make such selection and appointment. * * * Similar conditions exist in other States, demonstrating the fact that trustees or superintending officers of State institutions, receiving their office not directly from the people, but by appointment from some other officers or boards for subordinate administrative purposes, are not understood to be included in the term 'State officers,' as used in the constitutional article on impeachment." The question was discussed in *State* v. *Smith,* 6 Wash. 496, 33 Pac. 974, and *State* v. *Burke,* 8 Wash. 412, 36 Pac. 281, but the line of distinction was not definitely drawn.

We conclude that magistrates are not such judicial officers as are removable under the impeachment article of the Constitution, but are removable in such manner as the General Assembly may provide.

We have held in *State ex rel. Lyon, Attorney General,* v. *Rhame and Fraser, ante* 455, that the Governor has no implied power to remove an officer holding under a statute which creates the office and fixes the tenure. For a still greater reason such power must be denied when the Constitution creates the office and fixes the tenure and no power of removal is conferred either by the Constitution or by statute. But even if it could be assumed that in the absence of a statute covering the subject the Governor, as the appointing officer, would have, under the common law, the power to remove at will magistrates serving for a full term, although the term of office is fixed by the Constitution, still it cannot be doubted that such com-

31—92

mon law power is at an end when the legislature, under express constitutional authority, has provided the condition on which the Governor may remove such officers. The General Assembly has provided for the removal by the Governor of all local officers—and magistrates fall in this class—for neglect of duty of any kind, but the power of removal is expressly conditioned on indictment and conviction. Criminal Code, sections 388 and 389. The General Assembly has provided further, by section 381, for removal by sentence of the Court of any county officer convicted of neglecting or refusing to pay over fines. Can it be doubted that these statutes supersede any common law power of removal at the will of the executive even if without them such power would have existed? Further, the Constitution itself negatives the claim that the Governor has unlimited power of removal of officers whose terms are fixed by law. The minds of the framers of the Constitution adverted to the subject of removal by the Governor and conferred that power only as to the officers of charitable and penal institutions. Article XII, section 8.

In addition to this both the Constitution and the statute law of the State, by necessary implication, have denied the Governor the unconditional power of removal by conferring the power of suspension and the power of removal of those whom he has appointed to fill vacancies. Section 22 of article IV confers on the Governor the power to suspend an officer having the custody of public funds when it appears to the governor that such officer is probably guilty of embezzlement and a true bill has been found, but in such case the suspension is at an end if the officer is acquitted, and removal follows the suspension only in the event of trial and conviction. This clearly shows that even for the highest official crime the Governor has only the power of suspension, and certainly implies that he shall not have the power of removal at will.

Kerr, having been appointed by the Governor and confirmed by the Senate, was not filling a vacancy by appointment of the Governor, but was serving a full term. Section 625 of Civil Code authorizes the Governor to remove for cause an officer appointed by him to fill a vacancy, and thus negatives the intention to confer on the Governor the power to remove an officer holding for a full term.

But aside from all other considerations, section 982 of Civil Code is conclusive against the power of the Governor to remove a magistrate serving a full term, at his discretion, without the approval of the Senate. That section provides: "Such magistrates may be suspended by the Governor for incapacity, misconduct or neglect of duty; and the Governor shall report any suspension, with the cause thereof, to the Senate at its next session, for its approval or disapproval." The difference between suspension and removal is evident to all men; one is the mere temporary withdrawal of the power to exercise the duties of an office, the other is a complete and final deprivation of official tenure. 29 Cyc. 1405; *Sumpter* v. *State,* 81 Ark. 61, 98 S. W. 719; *Poe* v. *State,* 72 Texas 625, 10 S. W. 737; *Gregory* v. *Mayor,* 113 N. Y. 416, 21 N. E. 119, 3 L. R. A. 854; *Maben* v. *Rosser* (Okla.), 103 Pac. 674. The General Assembly, in conferring on the Governor the power to suspend, denied him the power to remove magistrates, except as such power was conferred conditionally by other statutes to which we have referred.

Consideration of the Constitution and the statute law of the State forces the Court to these conclusions:

First. The Governor has no power to remove magistrates serving for a full term, except after trial and conviction as provided by the Constitution and the statutes referred to.

Second. The Governor has power to suspend such magistrates, when a showing has been made to him by affidavit that the magistrate is probably guilty of embezzlement and a true bill has been found.

Third. The Governor has the power of suspension also for incapacity, misconduct, or neglect of duty, subject to the requirement that he should submit the suspension to the Senate at its next session for its approval or disapproval.

Fourth. The attempt of the Governor to remove Kerr without indictment and conviction, as provided by law, was without effect as a removal.

But the question remains, can any effect be given to the Governor's order, designed as a removal, by giving to it the lesser effect of a suspension for the misconduct, imputed by the Governor, of failing to make monthly statements to the auditor and treasurer of the county?

The presumption is that the chief executive, in the exercise of the powers of his great office, acts with a view to the public interest, and, therefore, the Courts should give effect to his acts to the utmost extent that they are authorized by law. The attempt to remove under this principle, might be given effect as a suspension of Kerr from office from 21st of March, 1911, when the Governor undertook to remove for cause, until the adjournment of the Senate at its next session in 1912; but section 982 of Civil Code expressly provides that the Governor shall report the suspension of an officer to the Senate at its next session for its approval or disapproval, and the suspension of Kerr was not so reported to the Senate. In addition to this the Senate expressed its refusal to approve Kerr's suspension by passing a joint resolution that Kerr was entitled to the salary of the office after the attempted removal. Aside from all this, however, we have reached the conclusion, after much consideration, that the attempted removal cannot be given the effect of a suspension because Kerr was not first notified and given an opportunity to be heard on the charge of misconduct.

The power of suspension is conferred in this clause of section 982: "Such magistrates may be suspended by the Governor for incapacity, misconduct or neglect of duty; and

the Governor shall report any suspension, with the cause thereof, to the Senate at its next session, for its approval or disapproval." The power is not intended for arbitrary exercise, but is conditioned on a finding by the Governor of incapacity, misconduct or neglect of duty. It is true that a public office is not property, and an incumbent has no legal cause of complaint when suspended or removed, even without reason, under a power to suspend or remove at will conferred by law. . Such a suspension or removal .implies no condemnation, for under such provisions of law changes in public office are common for reasons which in nowise reflect on the person suspended or removed. But under a statute like this, conferring on the Governor the power to suspend a magistrate, for incapacity, misconduct or neglect of duty, suspension implies that the Governor has by careful investigation ascertained the fact that the officer is incapable, or has been guilty of misconduct or neglect of duty. When it is remembered that the Governor, to whom the law has entrusted the power to suspend an officer, is presumed to act with fairness and sedate judgment, it becomes evident that the suspension by him for misconduct is a most serious condemnation. The Court cannot impute to the General Assembly the intention to subject an officer to such a condemnation without notice and an opportunity to be heard, for the intention to preserve the right to be heard before condemnation is implied in all legislation unless it is expressly denied.

Under statutes like this conferring the power of *removal* the right to be heard under the principle we have stated has been upheld by the Courts with little dissent. The authorities on the subject, both English and American, are too numerous for citation. Elaboration of the principle referred to and the authorities will be found in *Trainor* v. *Wayne County Auditors* (Mich.), 15 L. R. A. 95 note; *State* v. *Hewitt* (S. D.), 16 L. R. A. 413; 23 Am. & Eng. Enc. 436; 29 Cyc. 1409. It is true, as we have already

pointed out, that removal is a permanent deprivation of office, while suspension is only a temporary deprivation; but, on the other hand, suspension is in some respects more serious than removal since the officer suspended must remain in uncertainty as to his future. It is also true that the public interests sometimes require that an officer should be quickly suspended, but even in such emergencies the present facilities of communication make possible notice and hearing before suspension, without detriment to the public. Stronger than all other considerations, however, is the fact that the General Assembly might have conferred on the governor the power to suspend at will for any cause he thought sufficient, and that power could have been exercised without notice and hearing; but it chose to withhold that power; and the limitation imposed on the power of suspension connotes the condition that it shall be exercised only after notice and hearing. There is little authority on the right to notice and hearing before *suspension* from office, but in *State* v. *Johnson,* 30 Fla. 433, 11 So. 845, 18 L. R. A. 410, the Court seems to regard *suspension* in this respect as standing on the same footing as removal.

Our conclusion is that the attempted removal of Kerr from the office of magistrate was without effect and that he is now, and has been since his confirmation by the Senate, a lawful magistrate of Greenwood county and that he, and not McDowell, is entitled to the salary.

The judgment of the Court is that the petition be dismissed.

MESSRS. JUSTICES HYDRICK *and* FRASER *and* CIRCUIT JUDGES PRINCE, GAGE, WILSON, DEVORE, RICE *and* SPAIN *concur*.

MR. CHIEF JUTICE GARY, *dissenting.* I dissent on the following grounds: First, for the reasons stated in the opinion herein, of Mr. Justice Watts, reported in 90 S. C. 400,

and second, because the petitioner is entitled to his salary from the date of his appointment, until the adjournment of the Senate in 1912, for the reasons stated in the case of *Elledge* v. *Wharton,* 89 S. C. 119, especially as a joint resolution was adopted by the General Assembly, at its session commencing the 9th of January, 1912, requiring the county supervisor of Greenwood county to draw his warrant for each month from January 1, 1911, for twenty-nine dollars and sixteen and two-thirds cents monthly salary, in favor of W. H. Kerr, till the expiration of his term of office as magistrate, and directing the treasurer of said county to pay said warrants. There is no difference in principle between that case and the one under consideration.

MR. JUSTICE WATTS, *dissenting.* The pleadings and facts are fully set out in the opinions filed in the case heretofore on February 26, 1912, 90 S. C. 400. Mr. Kerr made answer as required by the Court and denies the right of the Governor to remove him and claims that he was duly appointed and commissioned on January 27, 1910, by the Governor of this State magistrate at Greenwood for the unexpired term of W. G. Austin, deceased, and until his successor was appointed and qualified, and denies that any one has been legally appointed as his successor. I adhere to the views expressed in my dissenting opinion herein, and am of the opinion that Kerr's term of office expired when the General Assembly adjourned in 1911, and there was a vacancy in the office then and the Governor had the right to and did fill it and that the petitioner was both *de jure* and *de facto* magistrate from the date he was commissioned until the Senate failed to confirm him in 1912, and entitled to pay for his services, and even if he was not *de jure* the magistrate, but only *de facto* being commissioned and rendering services as such he would be entitled to be paid for his services, under *Elledge* v. *Wharton,* 98 S. C. 113. I

think the petition should be granted and mandamus issued in accordance with views indicated.

CIRCUIT JUDGE SEASE. *concurs.*.

CIRCUIT JUDGE FRANK B. GARY, *dissenting.* I cannot concur in the opinion of the majority of the Court *en banc.* The question that the Court is called upon to decide is whether or not Mr. McDowell is entitled to demand payment of his salary as magistrate.

I am of the opinion that Mr. Kerr is a suspended officer. Whether he was justly or unjustly suspended is beside the question. Mr. McDowell having discharged the duties of the office by commission from the Governor pending the suspension of Mr. Kerr, he is at least a *de facto* officer, and I think he should be paid the salary for his services while so acting. The fact that the General Assembly made provision for paying a salary to Mr. Kerr also pending his suspension does not change the status of the parties. I therefore dissent.