This matter was first presented to the Court at the April session as an appeal
by the State from a decree of his Honor, Judge Bonham, presiding in the First Circuit, reversing an order by the Governor removing the respondent, Ballentine, from the office of Sheriff of Berkeley County. His Excellency proceeded under the Act of March 5, 1924, 33 St. at Large, page 997, entitled "An Act to provide for the removal of certain officers." *Page 374 
The appeal by Ballentine from the order of the Governor was taken, also, under the provisions of that Act.
Upon the filing of the decree of Judge Bonham, reversing the order of the Governor, the State gave notice of intention to appeal therefrom to this Court. The appeal was duly perfected, and was presented, as stated, at the April session, at which time counsel on both sides were heard in argument. No objection or suggestion at that time was entered that a review of Judge Bonham's decree could not be presented byappeal, or that the Act in question was in any particular violative of the provisions of the Constitution; in fact, the respondent invoked the graces of that Act for his relief, pursued the right of appeal to a Circuit Judge therein provided for, received a favorable decision from Judge Bonham, and was sitting steady against the wind.
The facts connected with the controversy appear as follows:
On September 25, 1928, the Governor issued a rule requiring Ballentine to show cause before him why he should not be removed from office, on account of misconduct in office and neglect of duty. The rule was made returnable on October 3, 1928, but was continued until November 3, 1928, when the Sheriff made return to the rule. A hearing was had before the Governor, testimony was taken, and on November 10, 1928, the Governor made an order removing the Sheriff from office upon the grounds of incapacity, misconduct, and neglect of duty. An appeal from this order was perfected by Ballentine under the provisions of the Act of March 5, 1924, 33 Stat. at Large, page 997, under which the Governor acted, to his Honor, Judge Bonham, who was then presiding in the First Circuit. The matter was heard before him at St. Matthews, in said circuit, on November 28, 1928, upon the record as made before the Governor, and upon additional testimony taken by the Judge. Judge Bonham filed his decree under date of January 31, 1929; in it he did not consider or pass upon "the correctness of the findings of fact by the *Page 375 
Governor," for the reason, as stated by him, in the view that he took of the issues involved, it was not necessary to do so. The decree reversed the order of removal made by the Governor, upon the ground that the Act of March 5, 1924, 33 Stat. at Large, page 997, "has no application to the office of Sheriff, and does not give to the Governor the power to remove C.P. Ballentine from the office of Sheriff of Berkeley County."
On May 3, 1929, this Court filed an opinion reversing the decree of Judge Bonham, and remanding the case for a hearing upon the merits of the appeal from the order of the Governor by the resident or presiding Judge of the First Circuit, for the reason that a decision of the merits of that appeal had been specifically waived by Judge Bonham. Thereafter, on May 11th, the respondent, Ballentine, filed a petition for a rehearing, contending, among other things, that the Act of 1924 contained no provision for an appeal from such an order as was Judge Bonham's, and that this Court was consequently without jurisdiction in the matter.
On June 7th, this Court, entertaining serious doubts upon the foregoing contention of the respondent, granted an order for a rehearing, and ordered it set down for reargument at the June session. On June 10th, the first day of the session, counsel representing the State made an application to this Court for a writ of certiorari, directing that all proceedings in the matter be certified in this Court for a review. The application was granted, and the matter ordered set down for argument on June 14th. The transcript of record in the appeal case was ordered to be considered as the certified copy of the proceedings ordered in the certiorari to be presented.
On June 14th, both matters, the appeal and the writ ofcertiorari were called up. Counsel for the respondent, Ballentine, taking the position that the State, in asking for the writ, practically conceded that it had no remedy by appeal, moved to quash the writ upon various grounds, summarized by them as follows: *Page 376 
"(1) That there is no way to review the decision of his Honor, Judge Bonham, in this matter, either by appeal,certiorari, or otherwise, because the Act in question says that the judgment of the Circuit Judge is final.
"(2) That the Act under which the Governor seeks to remove your respondent is unconstitutional, null and void, for the following reasons:
"(a) Because the Act attempts to confer upon His Excellency, the Governor, judicial functions.
"(b) Because the Act gives a Circuit Judge the right to review and pass upon an executive or administrative act of the Governor."
While it is exceedingly doubtful that the respondent is in a position to question the constitutionality of the Act of 1924, under the circumstances detailed, the matter is of such extreme importance to the public interests that the Court will waive the technical objection and consider it. The conclusion reached, that it cannot be sustained, renders negligible the questions whether a review of Judge Bonham's decree is available to the State, either by direct appeal or by writ of certiorari, as well as the question of the Court's disposition of either.
The Act of 1924 contains two very important provisions: (1) That the Governor may remove certain officers, ascertained to his satisfaction to have been guilty of misconduct, neglect of duty, or incapacity, after due notice and a hearing; (2) provided, that the removed officer shall have the right of appeal to a Circuit Judge, who shall determine the issues of law and fact, upon the record as made before the Governor, and upon such additional evidence as he shall see fit to allow.
We do not think that there can be a question as to the constitutionality of the first part of the Statute, the power of removal. Article 3, § 27, of the Constitution provides: "Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law, *Page 377 when no mode of trial or removal is provided in this Constitution."
The necessary conclusion of the ruling of his Honor, Judge Bonham, is that a mode of trial or removal of a county Sheriff, for incapacity, misconduct, and (or) neglect of duty, is provided in the Constitution. If it is thus provided, the mode of trial or of removal prescribed must be pursued; if it is not, and the Act of 1924 is otherwise free from objection, the Governor has the authority to act under the provisions of that Statute.
The sections of the Constitution relied upon to sustain the contention that it has made such provision will be considered. The Act of 1924 specifically exempts from its operation officers whose removal is provided for in Article 4, § 22, and in Article 15, § 4.
In order to establish the contention of the respondent, Sheriff, that the Constitution has provided for the removal of a county Sheriff, it must be made to appear that in one or the other of these sections such provision has been made, for they are the only ones in the Constitution which treat of the matter at all.
Article 4, § 22, is as follows: "Whenever it shall be brought to the notice of the Governor by affidavit that any officer who has the custody of public or trust funds is probably guilty of embezzlement or the appropriation of public or trust funds to private use, then the Governor shall direct his immediate prosecution by the proper officers, and upon true bill found the Governor shall suspend such officer and appoint one in his stead, until he shall have been acquitted by the verdict of a jury. In case of conviction the office shall be declared vacant and the vacancy filled as may be provided by law."
Certainly this section makes no provision for the removal of a Sheriff upon a general charge of "incapacity, misconduct, or neglect of duty," referred to in Article 3, § 27. It provides for a special proceeding upon a particular charge of *Page 378 
misconduct, the embezzlement of public or trust funds. The Governor is required to direct the immediate prosecution of the offending officer, and upon a true bill being found to suspend him and appoint another, until the acquittal of the officer charged. Upon his conviction the office shall be declared vacant (by the Court, we assume, and not by the Governor), and the vacancy filled as may be provided by law. Even in such a particular offense, it does not appear that the power of removal is vested in the Governor or otherwise provided for except upon a trial and conviction of the officer.
In McDowell v. Burnett, 92 S.C. 469, 75 S.E., 873, 875, the Court, referring to this section, said: "This applies to the removal of all officers, including Magistrates, except the Governor; but, being limited to the misconduct of embezzlement, it has no application to other forms of misconduct or to incapacity or neglect of duty."
Article 15, § 4, is as follows: "For any willful neglect of duty, or other reasonable cause, which shall not be sufficient ground of impeachment, the Governor shall remove any executive or judicial officer on the address of two-thirds of each house of the General Assembly: Provided, that the cause or causes for which said removal may be required shall be stated at length in such address, and entered on the journals of each house: And provided further, that the officer intended to be removed shall be notified of such cause or causes, and shall be admitted to a hearing in his own defense, or by his counsel, or by both, before any vote for such address; and in all cases the vote shall be taken by yeas and nays, and be entered on the journals of each house respectively."
This section is found in the article entitled "Impeachment." Strangely enough, although it provides for the removal of any executive or judicial officer, "for any willful neglect of duty, or other reasonable cause, which shall not be sufficient ground of impeachment," it nowhere defines what shall be deemed such sufficient ground of impeachment. *Page 379 
But, as is said in 46 C.J., 1102: "It is immaterial that there is an absence of constitutional or statutory definition of impeachable offense. The grant of the general power of impeachment properly and sufficiently indicates the causes for its exercise. Under the common law the wrongs justifying impeachment need not be statutory offenses, or even offenses against any positive law. Generally speaking they are designated as high crimes and misdemeanors."
And in Ferguson v. Maddox, 114 Tex., 85,263 S.W., 888, 892: "The power granted to the House to `impeach,' and the Senate to try `impeachment,' carries with it, by inevitable implication, the power to the one to prefer and to the other to try charges for such official delinquencies, wrongs, or malfeasances as justified impeachment according to the principles established by the common law and the practice of the English Parliament and the parliamentary bodies in America."
In this article, the officers who are made subject to impeachment are "the Governor and all other executive and judicial officers," and the question is whether the county Sheriff is an executive officer, within the meaning of that term, used in the article on "Impeachment." If he can be so considered, the lumbering process of impeachment must be invoked, should he be guilty of such high crimes and misdemeanors as would warrant the impeachment of the Governor, or a Justice of this Court, or a Circuit Judge, or the process of an address by the General Assembly for lesser offenses. In view of the fact that the government is divided by the Constitution into the three familiar departments, and the Sheriff is not referred to in the article devoted to the executive department, and the universal acceptance of the term as applicable to State officers, we cannot think that the convention intended, by the term "executive," to put Sheriffs in the class with State officers and judges. The convention evidently had in mind the three departments of the government, and, as impeachment of members of the legislative department *Page 380 
was considered inadvisable, at least, the other departments were referred to, the executive and judicial.
In the case of McDowell v. Burnett, 92 S.C. 469,75 S.E., 873, 876, the Court en banc, speaking through Mr. Justice Woods, presents an argument which reinforces the foregoing conclusions: "Search for the line of distinction which the framers of the Constitutions of 1868 and 1895 intended to draw, in the light of the history of the subject in this State and of judicial authority in this country, leads to this conclusion: Every executive and judicial officer whose authority and jurisdiction extends over the entire State, in whose official conduct the entire State is concerned, and whose office was created by the Constitution, or created by Statute and filled by election by the people at large, is removable by impeachment, or by the Governor on the address of the General Assembly, or by conviction of embezzlement or of appropriation of trust funds in these modes only. All other officers are subject to removal under the provisions of the Statute law of the State, or under the common law, where that is applicable."
It seems clear, therefore, that as a Sheriff would not be subject to impeachment, or to removal upon the address of both houses of the General Assembly, Article 15 cannot be said to have made provision for his removal. There being, then, "no mode of trial or removal * * * provided in this Constitution" for the removal of a Sheriff for the offenses named in Article 3, § 27, the method of removal is left to the General Assembly, which has spoken in the Act of 1924.
The second important provision in the Act — that is, for an appeal from the order of the Governor, removing an officer, to a Circuit Judge, who is vested with the power of reversing the order of the Governor (what was actually done in the present case) — is unfortunately the reef upon which the vessel has stranded. If the power of reviewing upon appeal such an order of the Governor had been confided to the *Page 381 Court of Common Pleas, such grant would have been beyond the power of the Legislature; a fortiori would the grant toa Circuit Judge be. He certainly has more restricted powers than the Court over which he presides.
Article 5, § 15, of the Constitution provides: "The Courts of Common Pleas * * * shall have appellate jurisdiction in all cases within the jurisdiction of inferior Courts, except from such inferior Courts from which the General Assembly shall provide an appeal directly to the Supreme Court."
If the commission of the power had been to the Court of Common Pleas, it could be sustained only upon the theory that the action of the Governor was the exercise of the jurisdiction of an inferior Court, and that he was acting in a judicial capacity; for the appellate jurisdiction of such Court is specifically limited by the Constitution to "cases within the jurisdiction of inferior Courts."
This follows inevitably from the decision of this Court in the case of Ex Parte Evans, 72 S.C. 547, 52 S.E., 419,420. In that case Mrs. Evans applied under the city ordinance to the fire commissioners for a permit to erect a house at a certain place; the commissioners granted the permit, but later revoked it. She then applied to the city council, which sustained the commissioners and refused the permit. Mrs. Evans then appealed to the Circuit Court from the order of the city council refusing the permit. The Circuit Court reversed the action of the city council, and allowed the petitioner to proceed with the erection of the proposed building. The objecting neighbor then appealed to the Supreme Court, upon the grounds, among others, that the Circuit Court had no jurisdiction to entertain the appeal of Mrs. Evans from the action of the city council, for the reason that the city council, in the particular matter, was not acting as a Court ofinferior jurisdiction, from which alone an appeal could be taken. In disposing of the question of jurisdiction the Court said: *Page 382 
"We are of the opinion that the Circuit Court was without jurisdiction to entertain the appeal sought to be taken from the action of the city council. Section 15, Art. 5, of the Constitution, gives to the Court of Common Pleas appellate jurisdiction `in all cases within the jurisdiction of inferior Courts, except from such inferior Courts from which the General Assembly shall provide an appeal directly to the Supreme Court.' Is this a case within the jurisdiction of the city council as an inferior court? Judge Story, in his Commentaries on the Constitution (Volume 3, page 626) says: `The essential of appellate jurisdiction is that it reviews and corrects the proceedings in a case already instituted, and does not create that cause in reference to judicial tribunals; an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been instituted in and acted upon by some other Court whose judgment or proceedings are to be reviewed. This appellate jurisdiction may be exercised in a variety of forms, and, indeed, in any form which the Legislature may choose to prescribe, but still the substance must exist before the form can be applied to it.' In order, therefore, to give the Circuit Court appellate jurisdiction in the matter appealed from the city council, it must appear that the city council was, in the matter sought to be reviewed, acting in a judicial capacity, as distinguished from doing a ministerial, administrative, or discretionary act."
The Court concluded:
"In so far as the city council may assume to grant or refuse such a permit, their action is administrative rather than judicial. Their decision in such matters is not binding in the sense of a judgment of a Court. The application for a permit is ex parte. If objection be offered, that does not raise a controversy between the petitioner and the objector which is submitted to the judicial authority of the city council. As the city council was not acting in the capacity of a Court in the premises, there was no case before the city council for *Page 383 
which a right of appeal is saved in Article 5, § 15, of the Constitution."
The action of the Governor was not only not that of an inferior Court, but we think it clear that it was the exercise of an executive function; the exercise of that function dependent upon his ascertainment of certain facts, while in a measure a judicial exercise, does not convert an executive function into a judicial.
In State Ex Rel. Rawlinson v. Ansel, 76 S.C. 395,57 S.E., 185, 192, 11 Ann. Cas., 613, the petitioners applied for a writ of certiorari to review the action of Governor Ansel in removing them as members of the board of directors of the State dispensary. In discussing the question whether in so doing Governor Ansel exercised executive or judicial functions, the Court said:
"The Legislature has not invested the Governor with any judicial function in the matter of removing the dispensary officers. `The mere fact that an officer exercises judgment in deciding the matter before him does not make his decision of a judicial character so that it may be reviewed by certiorari.' Throop on Pub. Off., § 802, and cases cited. The power of removal was vested in the Governor as Governor, and is essentially a political, governmental, executive duty, and therefore beyond the control of the judiciary. In the case of InRe. Guden, 171 N.Y., 529, 64 N.E., 451, the New York Court of Appeals held that `Const., Article 10, Section 1, vesting power in the Governor to remove officers designated therein, on charges and after hearing, is executive, and not judicial, and the exercise of that power is not reviewable by the Courts.'"
In the case of In Re Guden, 171 N.Y., 529,64 N.E., 451, 452, referred to in the Rawlinson case, next above, the Court, per Chief Justice Parker, said:
"The Constitution further specifically provides — and has since 1821 in effect, and since 1846 in precisely the same words — that `the Governor may remove any officer, in this *Page 384 
section mentioned (Sheriffs, Clerks of counties, District Attorneys and Registers in counties having Registers), within the term for which he shall have been elected; giving to such officer a copy of the charges against him, and an opportunity of being heard in his defense.' Article 10, § 1. It does not require argument to persuade the mind that the power thus conferred is executive, not judicial, and that it was intended to be vested exclusively in the Governor."
The provision of the New York Constitution, as appears, is quite similar to that in the Act of 1924. In 1 Cooley, Const. Lim. (8th Ed.), 229, it is said: "The Legislature must declare the policy of the law and fix the legal principles which are to control in given cases; but an administrative officer or body may be invested with the power to ascertain the facts and conditions to which the policy and principles apply."
If we should be in error in holding that the action of the Governor was the exercise of an executive function, and that it was the judgment of an inferior Court, the exercise of a judicial function, the bar of the Constitution which requires the separation forever of the three departments of government would be insuperable; judicial authority cannot be vested in the Chief Executive.
In 1 Cooley, Const. Lim. (8th Ed.), 221, it is said: "And, on the other hand, the Legislature cannot confer upon him [the Governor] judicial authority * * * or clothe him with any authority, not executive in its nature, which the Legislature itself, under the Constitution, is restricted from exercising."
So that it matters not whether we consider that under the Act the Governor was charged with an executive or a judicial function; if executive, he was not an inferior Court; if judicial, the commission to him of such power was an infraction of the Constitution.
The difficult and often perplexing question remains to be decided: Whether, a part of a Statute being declared unconstitutional, *Page 385 
the entire Statute is invalidated; or whether that part which is not amenable to the constitutional infirmity may remain of force.
Judge Cooley, at page 361 of his work on Constitutional Limitations (8th Ed.), thus declares the test:
"When, therefore, a part of a Statute is unconstitutional, that fact does not authorize the Courts to declare the remainder void also, unless all the provisions are connected insubject-matter, depending on each other, operating for thesame purpose, or otherwise so connected together in meaning, that it cannot be presumed the Legislature would have passed the one without the other. * * * If a Statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if its purpose is to accomplish a single objectonly, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connectedwith and dependent on each other, as conditions, consideration, or compensations for each other, as to warrant the belief that the Legislature intended them as a whole, and if all could not be carried into effect the Legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditioned, or connected must fall with them."
When the fact is considered that the office of Governor is intensely a political one, that his election is not infrequently the result of a clash between opposing parties or factions, and that animosities perhaps unfounded are engendered, it is but natural to assume that the practically arbitrary power vested in him by the constitutional part of the Act would not have been bestowed, without the salutary check of the provision for an appeal. Certainly one cannot be assured that the first would have been enacted without the second. The two together appear as parts of a whole, intended to accomplish a certain object with as great fairness as could be conceived *Page 386 
to the accused; they seem to answer every essential of the definition of Mr. Cooley.
We cannot conceive of a clearer illustration of the legislative jealousy of despotic power than the simple and fair limitation attempted to be created. If it should perish, as appears inevitable, the absolute power of removal, which may be allowed to remain, would be a mockery of the legislative purpose; that which was bestowed as a qualified power will have become, what they intended it should not be, an absolute one.
MR. JUSTICE BLEASE, and CIRCUIT JUDGES WILSON, MAULDIN, GRIMBALL, SEASE, and SHIPP concur.