17203

STATE ex rel. G. HASKELL THOMPSON, Plaintiff, v. JOHN I.
SEIGLER and STATE OF SOUTH CAROLINA, Defendants

(94 S. E. (2d) 231)

116

Messrs. *T. C. Callison, Attorney General, James S. Verner, Assistant Attorney General,* and *D. R. McLeod, Assistant Attorney General,* all of Columbia, and *Jefferies, McLeod & Unger,* of Walterboro, *for Respondents,*

*J. M. Moorer, Esq.* of Walterboro, *for Plaintiff,*

August 23, 1956.

TAYLOR, Justice.

This case in the original jurisdiction of this Court concerns the validity of an order of Governor George Bell Timmerman, Jr., suspending Sheriff G. Haskell Thompson of Colleton County from office until the said Thompson is acquitted of the charges contained in an indictment by the Grand Jury of the U. S. District Court at Columbia, South Carolina.

Plaintiff, the suspended Sheriff, contends:

(1) A constitutional officer can be suspended by the Governor only in the manner provided by the Constitution.

(2) The act of the General Assembly under which the order of suspension was issued denies to him due process and equal protection of the law.

(3) The act of the General Assembly under which the order of suspension was issued does not apply when such indictment is in the Federal Courts.

On June 30, 1956, the Honorable George Bell Timmerman, Jr., Governor of South Carolina, by Executive Order 14 suspended G. Haskell Thompson, then Sheriff of Colleton County, from the office of Sheriff of Colleton County and appointed in his stead John I. Seigler until the said G. Haskell Thompson should be acquitted of indictments found against him by the Grand Jury of the United States Court on June 4, 1956, and June 5, 1956, charging him with interfering with a Federal Grand Juror and with violation of the Internal Revenue Liquor Laws of the United States.

On July 3, 1956, on the basis of the summons and complaint in an action entitled *State ex rel. G. Haskell Thompson, Plaintiff, v. John I. Seigler, Defendant,* in the absence of the Judge in the Fourteenth Circuit, His Honor, William H. Grimball, issued an order restraining and enjoining the defendant, John I. Seigler, from exercising any of the duties of the office of Sheriff of Colleton County under said Executive Order 14.

On the same date, to wit, July 3, 1956, on the basis of the summons and complaint in the case of *The State of South Carolina ex rel. T. C. Callison, Attorney General,* on the Complaint of *John I. Seigler v. G. Haskell Thompson,* and in the absence of the Judge of the Fourteenth Circuit from the Circuit, His Honor, James M. Brailsford, Jr., issued a rule to show cause requiring the said G. Haskell Thompson to show cause why he should not turn over to John I. Seigler the office of Sheriff of Colleton County, and the books, papers, records and equipment appurtenant thereto.

Upon motion of counsel for plaintiff and the Attorney General on July 10, 1956, this Court passed an order assum-

ming original jurisdiction of the causes, staying all further proceedings in the Court of Common Pleas for Colleton County, keeping in effect until further order of this Court the injunction issued by Judge William H. Grimball; making the State of South Carolina a party defendant to the first entitled action *Thompson v. Seigler* and requiring the defendant to plead to the merits of the first entitled action on or before July 16, 1956.

The order of suspension issued under an act of the General Assembly approved March 27, 1956, 49 St. at Large, p. 1841, reads as follows:

"Any State or county officer who is indicted in any court for any crime may, in the discretion of the Governor, be suspended by the Governor, who in event of suspension shall appoint another in his stead until he shall be acquitted. In case of conviction the office shall be declared vacant by the Governor and the vacancy filled as provided by law."

Article 15, Secs. 1 and 4, Article 4, Sec. 22, Article 5, Sec. 30, and Article 3, Sec. 27 of the South Carolina Constitution of 1895 all refer to removal, suspension or disqualification of public officers, the wording of Article 3, Sec. 27 being:

"Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law, when no mode of trial or removal is provided in this Constitution."

The powers of the General Assembly are plenary and not acquired from the constitution and it may enact such legislation as is not expressly or by clear implication prohibited by the constitution. It does not have such control of a constitutional office as to abolish, vary its term, prescribe a different mode of filling such office, remove or suspend the office holder unless authority for such action is found in the Constitution. However, it may provide for the removal of such officers as fail to meet the standards or requirements of the Constitution. *Moseley v. Welch,* 209 S. C.

19, 39 S. E. (2d) 133; *Taylor v. Marsh,* 211 S. C. 36, 43 S. E. (2d) 606; *Beaufort County v. Jasper Co.,* 220 S. C. 469, 68 S. E. (2d) 421; *Caldwell v. McMillan,* 224 S. C. 150, 77 S. E. (2d) 798. See also West's Digest, Constitutional Law, 26.

Plaintiff relies strongly upon *State ex rel. Huckabee v. Hough,* 103 S. C. 87, 87 S. E. 436, 437, which was based upon *McMillan v. Bullock,* 53 S. C. 161, 31 S. E. 860, in which the Statute then under consideration was held to be unconstitutional; however, the Court in its opinion used the following language which is apropos here:

"The power here given to provide for the removal of officers for the causes specified carries with it, by implication, power to provide for the temporary filling of a vacancy so created by appointment or otherwise, until the office can, in due and regular course, be filled in the manner prescribed by the Constitution, unless it is otherwise provided in the Constitution, because it would not be reasonable to conclude that it was intended that the office should remain vacant. *State [ex rel. Lyon] v. Bowden,* 92 S. C. 393, 75 S. E. 866. It also carries with it the power to provide the manner of removal, which includes the power of providing for a temporary suspension as a step in and incident to the exercise of the power of removal; so that provision may be made for the temporary suspension of officers pending a hearing or trial, upon the result of which the exercise of the power of removal would depend. In such case, the suspension might, on account of the circumstances of the particular case, extend to the end of the term; but it would, nevertheless, be suspension, and the legal consequences of suspension, whether more or less favorable to the suspended officer, would ensue. *McDowell v. Burnett, supra* [92 S. C. 469, 75 S. E. 873].

"* * * the statute attempts to authorize indefinite suspension—not temporary suspension as a step in and incident to removal—and it makes no provision for the performance of the duties of the office during the suspension."

The office of Sheriff was created by Article 5, Sec. 30 of the South Carolina Constitution of 1895 and further reference thereto reveals that Article VII, Sec. 8 has to do with removal of officers of charitable and penal institutions. Article XV, Sections 3 and 4 refer to impeachment and removal upon the address of two-thirds of each house of the General Assembly and these sections have no reference to Sheriffs, *State ex rel. Wolfe v. Sanders,* 118 S. C. 498, 110 S. E. 808; *State ex rel. Richards v. Ballentine,* 152 S. C. 365, 150 S. E. 46, 50, 66 A. L. R. 574. However, the *Ballentine case* is authority for the proposition that under an act of the General Assembly providing the mode of removal, the Governor may have the power to remove a Sheriff, the Court stating:

"Certainly this section makes no provision for the removal of a sheriff upon a general charge of 'incapacity, misconduct, or neglect of duty,' referred to in article 3, § 27. It provides for a special proceeding upon a particular charge of misconduct, the embezzlement of public or trust funds. The Governor is required to direct the immediate prosecution of the offending officer, and upon a true bill being found to suspend him and appoint another, until the acquittal of the officer charged. Upon his conviction the office shall be declared vacant (by the court, we assume, and not by the Governor), and the vacancy filled as may be provided by law. * * *

"In *McDowell v. Burnett,* 92 S. C. 469, 75 S. E. 873, 875, the court referring to this section, said: 'This applies to the removal of all officers, including magistrates, except the Governor; but, being limited to the misconduct of embezzlement, it has no application to other forms of misconduct or to incapacity or neglect of duty.' * * *

"It seems clear, therefore, that as a sheriff would not be subject to impeachment, or to removal upon the address of both houses of the General Assembly, article 15 cannot be said to have made provision for his removal. There being, then, 'no mode of trial or removal * * * provided in this

Constitution' for the removal of a sheriff for the offenses named in article 3, § 27, the method of removal is left to the General Assembly * * *."

From the foregoing it is seen that the Constitution has provided no mode for removal of sheriffs for incapacity, misconduct or neglect of duty. Hence, such removal may be provided by the legislature, which was done by the act in question dated March 27, 1956 within the framework of Art. III, Sec. 27 of the South Carolina Constitution of 1895 and temporary suspension being a step and incident to removal is implied in the power of removal.

Plaintiff also contends that the Act is in violation of Article I, Sec. 5, which states:

"The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty or property without due process of law, nor shall any person be denied the equal protection of the laws."

The order of suspension can in no wise be said to deprive the suspended sheriff of his life or liberty and the office holder acquires no vested property right in the office as

"It is generally held that while public officers and civil service employees have rights which will be protected against infringement, those rights are not vested property rights protected by the state and federal constitutional provisions against the taking of property without due process of law; and the rule supported by the great weight of authority is that public office and government employ, and the emoluments thereof, are not property within the sense of the constitutional guaranties of due process of law." 16-A. C. J. S., Constitutional Law, § 600, p. 705.

The Governor may suspend without notice so long as he does not act arbitrarily, *McDowell v. Burnett,* 92 S. C. 469, 75 S. E. 873; *Daniel v. Citizens & Southern Nat. Bank,* 182 Ga. 384, 185 S. E. 696; *Jones v. State,* 104 Ark. 261, 149 S. W. 56; *Wilson v. State of North*

*Carolina,* 169 U. S. 586, 18 S. Ct. 435, 42 L. Ed. 865, see also 43 Am. Jur., Public Officers, and the annotations thereunder. Sections 242-244 of which states respectively:

"So long as action is not arbitrary, the suspension of an officer pending his trial for misconduct, so as to tie his hands for the time being, seems to be universally accepted as fair and often necessary. The power to suspend is generally considered as included in the power of removal for cause, since a suspension is merely a less severe disciplinary measure. But where the power to remove at will or at pleasure exists, it has been observed that the power to suspend is not necessary and does not exist. Moreover, the indefinite suspension of a public officer without pay is not considered as within the general power of removal. * * *

"Notice and hearing are not prerequisite to suspension unless required by statute, and a suspension without such notice does not deprive the officer of property without due process of law. Nor is a suspension wanting in due process of law or as a denial of the equal protection of the laws because the evidence against the officer is not produced and he is not given an opportunity to confront his accusers and cross examine the witnesses."

The Governor does not have unlimited power of removal of officers whose terms are fixed by law or the power of arbitrary and indefinite suspension and his discretion is subject to review by this Court. *Dacus v. Johnston,* 180 S. C. 329, 185 S. E. 491. However, where suspension is within the contemplation of Article 3, Sec. 27, as to incapacity, misconduct or neglect of duty as authorized by the Act of March 27, 1956, and neither arbitrary nor indefinite, it is proper where provision is made for the exercise of the power in the interim.

Plaintiff also contends that the act contravenes the provisions of Article III, Sec. 1 of the South Carolina Constitution of 1895, which reads as follows:

"Legislative power vested in two branches. The legislative power of this State shall be vested in two distinct

branches, the one to be styled the 'Senate' and the other the 'House of Representatives,' and both together the 'General Assembly of the State of South Carolina.' "

We are unable to agree with the contention that the act is an unconstitutional delegation of legislative power to the Federal Government or that of a sister state. The power to suspend reposes with the Governor, not the Grand Jury, whether it be State or Federal, and no legislative powers are thereby delegated.

■ Every presumption will be made in favor of the constitutionality of a legislative act and a statute if possible will be construed so as to render it valid. It will be declared unconstitutional only where its invalidity appears so clearly as to leave no room for reasonable doubt that it is in violation of some provision of the Constitution. *Santee Mills v. Query,* 122 S. C. 158, 115 S. E. 202; *Moseley v. Welch, supra; Caldwell v. McMillan, supra.*

■■ For the foregoing reasons we are of the opinion that the Act of the General Assembly heretofore referred to approved March 27, 1956 is not repugnant to the Constitution of this State and that Executive Order No. 14 of the Governor suspending Sheriff Thompson being reasonably within the provisions of Article 3, Sec. 27 of the Constitution for South Carolina which provides for removal for incapacity, misconduct or neglect of duty is valid. That the complaint should be dismissed and the possession of the office of Sheriff of Colleton County together with the records thereof should be turned over to the Sheriff designate John I. Seigler forthwith; and it is so ordered.

STUKES, C. J., and LEGGE and Moss, JJ., concur.

OXNER, J., dissents.

OXNER, Justice (dissenting).

The Act, 49 St. at Large, p. 1841, under which Sheriff Thompson was removed authorizes the Governor, in his discretion, without a hearing, to suspend, pending trial, *"Any*

State or county officer who is indicted in *any* court for *any* crime". (Italics mine.) It applies to all crimes without restriction or limitation. I do not think the delegation of such a broad and sweeping power can be sustained. In *South Carolina State Highway Department v. Harbin,* 226 S. C. 585, 86 S. E. (2d) 466, 471, we quoted the following with approval:

" 'When courts are considering the constitutionality of an act, they should take into consideration the things which the act affirmatively permits, and not what action an administrative officer may or may not take.' " *Northern Cedar Co. v. French,* 131 Wash. 394, 230 P. 837, 843.

"The presumption that an officer will not act arbitrarily but will exercise sound judgment and good faith cannot sustain a delegation of unregulated discretion." 42 Am. Jur., Public Administrative Law, Section 45.

The Act further contains the far-reaching provision that in case of conviction, which includes conviction of any crime, "the office *shall* be declared vacant by the Governor and the vacancy filled as provided by law." (Italics mine.)

It is my view that this legislation should be declared unconstitutional.